Nos. 23-1286, 23-1335

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

CHAYA WERFEL, et al.,
Plaintiffs/Appellants
v.
THE PALESTINE LIBERATION ORGANIZATION, et al.,
Defendants/Appellees
---------------------
UNITED STATES OF AMERICA,
Intervenor.

CHAYA WERFEL, et al.,
Plaintiffs,
v.
THE PALESTINE LIBERATION ORGANIZATION, et al.,
Defendants/Appellees
---------------------
UNITED STATES OF AMERICA,
Intervenor/Appellant.

On Appeal from the United States District Court
for the District of Colorado
The Honorable Gordon P. Gallagher
D.C No. 21-cv-03043-GPG-STV

**APPELLANTS CHAYA WERFEL, ET AL. OPENING BRIEF**

Daniel K. Calisher
Michael A. Rollin
Chip G. Schoneberger
FOSTER GRAHAM MILSTEIN
& CALISHER LLP
360 S. Garfield Street, 6th Floor
Denver, CO 80209
Telephone: (303) 333-9810
Emails: calisher@fostergraham.com
mrollin@fostergraham.com
cschoneberger@fostergraham.com

Asher Perlin
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
Telephone: (786) 687-0404
Email: asher@asherperlin.com

*ORAL ARGUMENT REQUESTED*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................iii

STATEMENT OF RELATED CASES ............................................... 1

JURISDICTIONAL STATEMENT ................................................... 2

ISSUES PRESENTED FOR REVIEW ............................................. 2

STATEMENT OF THE CASE .......................................................... 4

SUMMARY OF THE ARGUMENT ................................................. 7

ARGUMENT ................................................................................... 10

  I.  The District Court Erred as a Matter of Law in Dismissing Plaintiffs' ATA Claims for Lack of Personal Jurisdiction................................................... 10

    A. Standard of Review........................................................... 10

    B. Neither the PA nor the PLO is a "person" under the Due Process Clause ............................................................ 10

    C. Defendants Consented to Jurisdiction Under the PSJVTA ................. 21

      1.  Legislative Background .............................................. 21

      2.  The PSJVTA's Statutory Predicates Have Been Triggered ........... 23

      3.  The District Court's Ruling is Erroneous

    D. The Court Has Specific Personal Jurisdiction Over the Defendants Because Their Extensive U.S.-Based Activities "Relate to" Plaintiffs' Claims in This Action ........................................................ 29

    E. The Court Has Jurisdiction Under Federal Rule of Civil Procedure 23.2.......................................................... 38

  II.  The Court Should Reinstate Plaintiffs' Nonfederal Claims ..................... 43

    A.  Standard of Review........................................................... 43

B.  The district court predicated dismissal of Plaintiffs' nonfederal claims on its erroneous personal jurisdiction ruling and thus this Court should reinstate the nonfederal claims ........................................................... 47

CONCLUSION ........................................................................................... 44

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT .............. 46

CERTIFICATE OF SERVICE........................................................................ 47

ATTACHMENTS

4862-9234-7553, v. 1

# TABLE OF AUTHORITIES

## Cases

*Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*,
  817 F.3d 755 (Fed. Cir. 2016)..............................................................30

*Amazon, Inc. v. Dirt Camp, Inc.*,
  273 F.3d 1271 (10th Cir. 2001) ........................................................... 2

*Associated Press v. Bd. of Pub. Educ.*,
  246 Mont. 386 (1991)........................................................................11

*Battle Fowler v. Brignoli*,
  765 F. Supp. 1202 (S.D.N.Y.)................................................38, 39, 42

*Bibbs v. Molson Coors Beverage Co. USA, LLC*,
  616 F. Supp. 3d 606 (N.D. Tex. 2022)................................................37

*Boston Telecomm. Grp., Inc. v. Deloitte Touche Tohmatsu*,
  249 Fed.App'x 534 (9th Cir. 2007) ....................................................25

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ..........................................................................36

*Burnet v. Brooks*,
  288 U.S. 378 (1933) ..........................................................................29

*Calagaz v. Calhoon*,
  309 F.2d 248 (5th Cir. 1962) .......................................................40, 41

*CGHH, LLC v. Cesta Punta Deportes, S.A. de C.V.*,
  2006 WL 8430970 (N.D. Ga. Mar. 31, 2006) ....................................25

*City of E. St. Louis v. Cir. Ct. for the Twentieth Jud. Cir., St. Clair Cnty., Ill.*,
  986 F.2d 1142 (7th Cir. 1993) ...........................................................12

*Cockrum v. Donald J. Trump for President, Inc.*,
  319 F. Supp. 3d 158 (D.D.C. 2018) ...................................................30

*Cohen v. Facebook*,
  252 F. Supp. 3d 140 (E.D.N.Y. 2017)................................................31

*Creek v. Vill. of Westhaven*,
  1987 WL 5429 (N.D. Ill. Jan. 15, 1987) ............................................................11

*Curley v. Brignoli, Curley & Roberts Assocs.*,
  915 F.2d 81 (2d Cir. 1990) ..................................................................................42

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ............................................................................................22

*Ditter v. Subaru Corp.*,
  2022 WL 889102 (D. Colo. Mar. 25, 2022)................................................30, 35

*DRFP v. Republica Bolivariana de Venezuela*,
  945 F. Supp. 2d 890 (S.D. Ohio 2013)................................................................13

*EEOC v. Arabian American Oil Co.*,
  499 U.S. 244 (1991) ............................................................................................28

*Eighteen Seventy, LP v. Jayson*,
  32 F.4th 956 (10th Cir. 2022) .............................................................................10

*Flory v. United States*,
  79 F.3d 24 (5th Cir. 1996) ..................................................................................25

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021)............................................................................29, 31, 39

*Fox v. Cal. Franchise Tax Bd.*,
  443 Fed. App'x 354 (10th Cir. 2011) ................................................................. 2

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*,
  582 F.3d 393 (2d Cir. 2009) ...............................................................................13

*Goldberg v. UBS*,
  660 F. Supp. 2d 410 (E.D.N.Y. 2009)................................................................22

*Havel v. Honda Motor Eur. Ltd.*,
  2014 WL 4967229 (S.D. Tex. Sept. 30, 2014)..............................................30, 34

*Hunter v. Serv-Tech, Inc.*,
  2009 WL 2858089 (E.D. La. Aug. 28, 2009).....................................................26

iv

*In re Nexus 6P Prod. Liab. Litig.*,
  2018 WL 827958 (N.D. Cal. Feb. 12, 2018) ......................................................30

*In re Scott Cable Commc'ns, Inc.*,
  259 B.R. 536 (D. Conn. 2001) ......................................................................12

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982) ......................................................................24

*Klieman v. PA*,
  923 F.3d 1115 (D.C. Cir. 2019) .........................................................31, 35, 37

*Knox v. PLO*,
  306 F. Supp. 2d 424 (S.D.N.Y. 2004) ...............................................................14

*Livnat v. Palestinian Auth.*,
  851 F.3d 45 (D.C. Cir. 2017) ......................................................................passim

*Mallory v. Norfolk S. Ry. Co.*,
  143 S. Ct. 2028 (2023) ........................................................... 6, 8, 23, 27

*Oklahoma v. Int'l Registration Plan, Inc.*,
  455 F.3d 1107 (10th Cir. 2006) ......................................................................12

*Price v. Socialist People's Libyan Arab Jamahiriya*,
  294 F.3d 82 (D.C. Cir. 2002) ......................................................................18

*Puerto Rico Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urb. Dev.*,
  59 F. Supp. 2d 310 (D.P.R. 1999) .............................................................13, 15

*Resol. Tr. Corp. v. Deloitte & Touche*,
  822 F. Supp. 1512 (D. Colo. 1993) .............................................................39, 42

*Sembach v. McMahon Coll., Inc.*,
  86 F.R.D. 188 (S.D. Tex. 1980) ......................................................................41

*Shatsky v. PLO*,
  955 F.3d 1016 (D.C. Cir. 2020) .............................................................35, 36, 37

*Shatsky v. PLO*,
  2022 WL 826409 (S.D.N.Y. Mar. 18, 2022) .............................................17, 19

v

*Smith v. United States*,
    561 F.3d 1090 (10th Cir. 2009) ........................................................43

*Sokolow v. PLO*,
    2015 WL 10852003 (S.D.N.Y. Oct. 1, 2015)....................................22

*South Carolina v. Katzenbach*,
    383 U.S. 301 (1966) .........................................................................12

*Taha v. Bucks Cnty. Pennsylvania*,
    172 F. Supp. 3d 867 (E.D. Pa. 2016) ...............................................12

*Titan Feeding, LLC v. Corey Cattle Co., LLC*,
    2022 WL 4182458 (D. Colo. Sept. 13, 2022)...............................30, 34

*Ungar v. PA*,
    315 F. Supp. 2d 164 (D.R.I. 2004)....................................................14

*Virgin Islands v. Miller*,
    2010 WL 1790213 (V.I. Super. May 4, 2010) ...................................13

*Wenz v. Memery Crystal*,
    55 F.3d 1503 (10th Cir. 1995) .....................................................24, 34

*Waldman v. PLO*,
    835 F.3d 317 (2d Cir. 2016) ...................................14, 17, 18, 19, 22, 23, 35, 36

## **Statutes**

18 U.S.C. § 2331....................................................................ix, 2, 20, 21, 31

18 U.S.C. § 2333 ..................................................................................... 2

18 U.S.C. § 2333(a) ..........................................................................10, 31

18 U.S.C. § 2334(a) ........................................................................5, 6, 39

18 U.S.C. § 2334(e) ...........................................................................ix, 3, 20, 21

18 U.S.C. § 2334(e)(1)............................................................................ 5

18 U.S.C. § 2338..................................................................................... 2

22 U.S.C. § 2378c-1.................................................................................27

4862-9234-7553, v. 1

28 U.S.C. § 1291 .................................................................................. 2

28 U.S.C. § 1331 .................................................................................. 2

28 U.S.C. § 1367 ..........................................................................2, 7, 43

Pub. L. No. 116-94 .............................................................................21

U.S. Const. amend. V .........................................................................11

## Rules

Fed. R. App. P. 32 ..............................................................................46

Fed. R. Civ. P. 4(k) .................................................... 5, 6 10, 11, 21, 39

Fed. R. Civ. P. 12 .........................................................................25, 26

Fed. R. Civ. P. 23.2 .......................................................................*passim*

## Other Authorities

7C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. Civ. § 1861 (3d ed.) ................................................................ 38, 39, 40, 41, 42

Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*,
81 Harv. L. Rev. 356 .........................................................................41

David Marcus, *The History of the Modern Class Action, Part I: Sturm Und Drang, 1953-1980*,
90 WASH. U. L. REV. 587 (2013) ....................................................41

# **GLOSSARY**

| ATA | Antiterrorism Act, 18 U.S.C. § 2331 *et seq.* |
|---|---|
| DOJ | United States Department of Justice |
| PFLP | Popular Front for the Liberation of Palestine |
| PSJVTA | Promoting Security and Justice for Victims of Terrorism Act, 18 U.S.C. § 2334(e) |
| TRNC | Turkish Republic of Northern Cyprus |
| UN | United Nations |

## STATEMENT OF RELATED CASES

None.

## JURISDICTIONAL STATEMENT

Plaintiffs' underlying action asserts federal claims under the Antiterrorism Act ("ATA"), 18 U.S.C. § 2331 *et seq.*, and nonfederal claims under Israeli law. (CJA Vol. I, pp. 24-25).[1]  The district court had original subject matter jurisdiction over the ATA claims pursuant to 28 U.S.C. § 1331 and 18 U.S.C. §§ 2333 and 2338. The district court had supplemental subject matter jurisdiction over the nonfederal claims pursuant to 28 U.S.C. § 1367(a).

The district court dismissed all of Plaintiffs' claims on August 23, 2023.  (CJA Vol. IV, pp. 964-981).  Plaintiffs timely appealed the dismissal order and judgment on September 13, 2023.  (CJA Vol. IV, pp. 982-1002).  This Court has jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final judgment disposing of all claims.  *See also Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1274–75 (10th Cir. 2001) ("where the dismissal finally disposes of the case so that it is not subject to further proceedings in federal court, the dismissal is final and appealable"); *Fox v. Cal. Franchise Tax Bd.*, 443 Fed. App'x 354, 356 (10th Cir. 2011).

## ISSUES PRESENTED FOR REVIEW

Plaintiffs sued the Palestine Liberation Organization ("PLO") and the Palestinian Authority ("PA") under the ATA and Israeli law, seeking damages for

---

[1]    "CJA" denotes the four-volume Consolidated Joint Appendix filed pursuant to this Court's Order of November 8, 2023.

2

international terrorism, wrongful death, personal injury, and related harms resulting from a terrorist attack in a synagogue in Jerusalem, Israel ("Attack").  The Promoting Security and Justice for Victims of Terrorism Act ("PSJVTA"), 18 U.S.C. § 2334(e), provides that "a defendant shall be deemed to have consented to personal jurisdiction in [a] civil action" under the ATA if it engages in specified conduct.  Plaintiffs allege defendants engaged in such conduct but the district court dismissed the federal claims for lack of personal jurisdiction, finding the PSJVTA's "deemed" consent provision violates due process.  The district court also rejected three additional bases for personal jurisdiction asserted by Plaintiffs.  The issue on appeal is whether the district court erred as a matter of law in dismissing Plaintiffs' claims for lack of personal jurisdiction, subdivided as follows:

1.  Whether a foreign political entity (PLO) or a foreign government (PA) are "persons" under the Due Process Clause entitled to its protections;

2.  If so, whether the PSJVTA's consent provision comports with due process;

3.  Additionally or alternatively (assuming Defendants have due process rights) whether the PLO's and PA's suit-related contacts with the United States satisfy due process' specific jurisdiction standard;

4.  Additionally or alternatively (assuming Defendants have due process rights) whether the district court had personal jurisdiction over the PLO and PA under Federal Rule of Civil Procedure 23.2.

4862-9234-7553, v. 1

5. If the Court reverses dismissal of Plaintiffs' federal claims, whether Plaintiffs' nonfederal claims, which arise from a common nucleus of operative facts as the federal claims, should be reinstated.

## STATEMENT OF THE CASE

Plaintiffs are the personal representatives of the estates of U.S. citizens and non-U.S. citizens murdered in the November 18, 2014, Attack; U.S. citizens present at the Attack who suffered physical, emotional, and/or other injuries as a result thereof; and family members of the aforementioned decedents and Plaintiffs, each of whom also suffered emotional or other injuries as a result of the Attack. (CJA Vol. I, pp. 35-42, 59-60, 64-68, 73). In their operative First Amended Complaint ("FAC"), Plaintiffs allege a constituent faction of the PLO known as the Popular Front for the Liberation of Palestine ("PFLP") carried out the Attack as an agent of the PLO and PA ("Defendants"),[2] and Defendants aided, abetted, and conspired with the PFLP to carry out the Attack and took other actions facilitating, enabling, and causing the Attack. (CJA Vol. I, pp. 44-62).

Plaintiffs allege the district court had personal jurisdiction over Defendants on four independent bases:

1)    Defendants are not "persons" within the meaning of the Due Process

---

[2]    For simplicity, "Defendants" refers only to the PLO and PA. Plaintiffs named Riyad Mansour as a defendant solely as a representative member of the PLO and PA pursuant to Federal Rule of Civil Procedure 23.2 and refer to him herein by name.

4

Clause and waived service of process and are thus subject to personal jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(1)(C) and/or 4(k)(2), and 18 U.S.C. § 2334(a).  (CJA Vol. I, p. 26).

2)      Defendants consented to personal jurisdiction by electing to engage in activities described in the PSJVTA, 18 U.S.C. § 2334(e)(1), after the relevant triggering dates, including: (i) making payments as directed by terrorists convicted and imprisoned for committing terrorist acts in which American citizens were killed or injured, or to family members of deceased terrorists who carried out such attacks; (ii) maintaining offices in the United States; and (iii) conducting extensive activities while present in the United States on behalf of the PLO or PA.  (CJA Vol. I, pp. 29-32).

3)      Defendants are subject to specific personal jurisdiction because at the time of the Attack, and for years prior, they maintained an office and a large staff in the United States, through which they carried out extensive activities within the United States that "relate to" Plaintiffs' claims in this action.  (CJA Vol. I, pp. 28-29, 46-49, 54-57).

4)      The court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 23.2 because Defendants are unincorporated associations, and, as such, are subject to suit based upon the court's jurisdiction over Riyad Mansour, a domiciliary of the United States who was named as a defendant as a

5

representative member of both Defendants and served in the United States.  (CJA Vol. I., pp. 32-34).

Defendants moved to dismiss the FAC for lack of personal jurisdiction and failure to state a claim ("MTD").  (CJA Vol. I, pp. 77-133).  As to personal jurisdiction under the PSJVTA, Defendants argued the PSJVTA's "deemed" consent provision violates the Due Process Clause of the Fifth Amendment to the United States Constitution.  (CJA Vol. I, pp. 91-101).  Defendant also challenged Plaintiffs' other alleged bases for personal jurisdiction.  (CJA Vol. I, pp. 102-114).

Plaintiffs opposed the MTD (CJA Vol. I, p. 134 – Vol. IV, p. 854) and the United States filed a "Brief in Support of the Constitutionality of the [PSJVTA]."  (CJA Vol. IV, pp. 868-894).  Because Defendants waived service[3] and ATA § 2334(a) permits nationwide service of process, the parties and the district court agreed Federal Rule of Civil Procedure 4(k)(1)(C) and/or 4(k)(2) apply and the exercise of personal jurisdiction over Defendants in this action turns solely on whether the exercise of such jurisdiction offends the Fifth Amendment Due Process Clause.  (CJA Vol. I, pp. 26, 106; Vol. IV, pp. 966-968).

Following the Supreme Court's decision in *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028 (2023) and pursuant to the district court's order, the parties and the

---

[3]     The district court noted "Defendants PLO and PA waived service of process in this action (D. 15) and Defendant Mansour was served at his home address in Florida (D. 55)."  (CJA Vol. IV, p. 968).

United States (as Intervenor) submitted supplemental briefing regarding *Mallory*'s impact on the PSJVTA.  (CJA Vol. IV, pp. 943-963).

On August 23, 2023, the district court dismissed Plaintiffs' federal claims for lack of personal jurisdiction.  (CJA Vol. IV, pp. 964-981). The court dismissed Plaintiffs' nonfederal claims for lack of *subject matter* jurisdiction under § 1367(c)(3).  (CJA Vol. IV, pp. 977-78).  The district court did not reach Defendants' motion to dismiss for failure to state a claim.  This appeal followed.  (CJA Vol. IV, pp. 982-1002).

## SUMMARY OF THE ARGUMENT

The district court dismissed Plaintiffs' federal claims for lack of personal jurisdiction, after finding that the exercise of such jurisdiction would violate the Due Process Clause. That ruling was erroneous for four separate reasons:

***First***, it is undisputed that the PLO is a foreign political entity and the PA is a foreign non-sovereign government. As such, neither of the Defendants is a "person" within the meaning of the Due Process Clause. In respect to the PA, it is long and well-established that a government – domestic or foreign, sovereign or not – cannot be considered a "person" entitled to the protection of the Due Process Clause. Similarly, a foreign political entity such as the PLO is not a "person" within the meaning of the Due Process Clause. Indeed, the Executive Branch has repeatedly and correctly opined that the PLO is not a "person" protected by the Due Process

7

Clause. Since these Defendants have no Due Process rights and waived service of process, the court below acquired personal jurisdiction over them.

*Second*, assuming arguendo that these Defendants had Due Process rights, they consented to jurisdiction under the PSJVTA. It was either frankly admitted or uncontested by Defendants below that they triggered the statutory predicates for consent to jurisdiction under the PSJVTA, but the district court found that the PSJVTA is unconstitutional because Congress cannot simply deem any conduct to constitute consent to jurisdiction, and because Defendants had provided no indication that they subjectively intended to submit to jurisdiction.

This holding is unfounded, because consent to jurisdiction must be volitional but need not be voluntary or willful, the U.S.-activities prongs of the PSJVTA are effectively identical to the jurisdiction-triggering in-forum conduct approved as constitutional by the Supreme Court's recent decision in *Mallory*, and the Pay-for-Slay prong of the PSJVTA is sufficiently related to the subject matter of ATA actions against these Defendants to pass constitutional muster.

*Third*, the court below has specific personal jurisdiction over Defendants because at the time of the Attack and for years prior, Defendants conducted extensive activities within the United States that are directly "related to" the claims from which this action arises.

4862-9234-7553, v. 1

Specifically, Defendants' U.S. activities were an integral part and necessary complement to their execution of and support for terrorist activities (from which the Attack here arises), because those U.S. activities were aimed at persuading the American public and government that the terrorism would not cease until the United States used its leverage with Israel to make the political concessions sought by the Defendants. Absent Defendants' U.S.-based messaging their terrorism had no chance of achieving its goals, and absent Defendants' terrorism their U.S.-based advocacy would also have been ineffective. Accordingly, Defendants followed a two-pronged strategy, under which their U.S.-based activities were completely intertwined with and necessary for the success of their terrorist activities.

***Fourth***, the Defendants here are unincorporated associations, and Federal Rule of Civil Procedure 23.2 permits a federal court to exercise personal jurisdiction over an unincorporated association when it has jurisdiction over a representative member of the association. Here, Plaintiffs named Riyad Mansour, who as U.S. domiciliary is subject to general personal jurisdiction in the United States, as a defendant as a representative member of the PLO and PA. Accordingly, the court below also had jurisdiction over the Defendants pursuant to Rule 23.2.

Additionally, after dismissing Plaintiffs' federal claims for lack of personal jurisdiction, and solely for that reason, the district court then also dismissed Plaintiffs' supplemental non-federal claims. Since the federal and nonfederal claims

arise from the same nucleus of operative facts, the nonfederal claims should be reinstated by this Court upon its reversal of the dismissal of the federal claims.

## ARGUMENT

### I. The District Court Erred as a Matter of Law in Dismissing Plaintiffs' ATA Claims for Lack of Personal Jurisdiction

#### A. Standard of review

This Court reviews dismissals for lack of personal jurisdiction de novo, "taking as true all well-pleaded facts alleged in the complaint." *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 964 (10th Cir. 2022). "[A]t this early stage in the litigation, in the absence of an evidentiary hearing, [Plaintiffs] need only make a prima facie showing of personal jurisdiction. In other words, plaintiffs may defeat a motion to dismiss by presenting evidence—either uncontested allegations in its complaint or evidence in the form of an affidavit or declaration—that if true would support jurisdiction over the defendant." *Id*. at 964-65 (cleaned up).

#### B. Neither the PA nor the PLO is a "person" under the Due Process Clause

The ATA authorizes suit "in any appropriate district court of the United States," and provides that "[p]rocess in such a civil action may be served in any district where the defendant resides, is found, or has an agent." 18 U.S.C. §§ 2333(a), 2334(a). Under Federal Rule of Civil Procedure 4(k), serving a summons or filing a waiver of service "establishes personal jurisdiction over a defendant . . . when

10

authorized by a federal statute" and "[f]or a claim that arises under a federal law . . . if exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(1)(c) and (2)(B).  But "[c]onstitutional limits on the personal jurisdiction of the courts do not protect entities that are not covered by the Due Process Clause, and the language of the Clause speaks only of 'persons.'" *Livnat v. Palestinian Auth.*, 851 F.3d 45, 48 (D.C. Cir. 2017).  That exception applies here because neither Defendant is a "person" within the meaning of the Due Process Clause.

The Due Process clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  It is axiomatic that "[t]he protections guaranteed by the constitutional right to due process were designed to protect people from governmental abuses[;] [t]hey were not designed to protect the government from the people." *Associated Press v. Bd. of Pub. Educ.*, 246 Mont. 386, 390 (1991).  In other words, "[t]he due process clause provisions protect natural persons and private corporations, not government, from arbitrary actions by the sovereign." *Creek v. Vill. of Westhaven*, 1987 WL 5429, at *7 (N.D. Ill. Jan. 15, 1987).

Courts thus consistently hold that governmental entities are not "persons" within the meaning of the Due Process Clause.  In *South Carolina v. Katzenbach*, the Supreme Court held "[t]he word 'person' in the context of the Due Process

Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union."  383 U.S. 301, 323 (1966).  *Cf. Oklahoma v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1113-14 (10th Cir. 2006) ("Oklahoma concedes that, as a State, it is not protected by the Due Process Clause of the Fifth Amendment.").  Courts have broadly applied this principle to other types of governmental entities.  *See e.g.*, *City of E. St. Louis v. Cir. Ct. for the Twentieth Jud. Cir., St. Clair Cnty., Ill.*, 986 F.2d 1142, 1144 (7th Cir. 1993) ("Municipalities cannot challenge state action on federal constitutional grounds because they are not 'persons' within the meaning of the Due Process Clause."); *Taha v. Bucks Cnty. Pennsylvania*, 172 F. Supp. 3d 867, 873 (E.D. Pa. 2016) ("The County Defendants have failed to cite any precedent to support the suggestion that, as government entities, they are entitled to due process"); *In re Scott Cable Commc'ns, Inc.*, 259 B.R. 536, 543 (D. Conn. 2001) ("Government entities have no right to due process under the Fifth Amendment's due process clause.").

Though the Supreme Court has never explicitly held that foreign states are not "persons" under the Due Process Clause, it has strongly indicated as much.  In *Republic of Argentina v. Weltover, Inc.*, the Court cited *Katzenbach* with approval despite "assum[ing], without deciding, that a foreign state is a 'person' for purposes of the Due Process Clause[.]"  504 U.S. 607, 619 (1992).  As the Second Circuit aptly recognized, "the [*Weltover*] Court's implication was plain: If the 'States of the

12

Union' have no rights under the Due Process Clause, why should foreign states?" *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 398–99 (2d Cir. 2009). Therefore, "[f]ollowing *Weltover*, the vast majority of federal courts to address this issue have determined that foreign states are not persons within the meaning of the Due Process Clause." *DRFP v. Republica Bolivariana de Venezuela*, 945 F. Supp. 2d 890, 906-07 (S.D. Ohio 2013) ("find[ing] the underlying reasoning of the majority position persuasive and hold[ing] that foreign states are not 'persons' entitled to protection under the Due Process Clause.") (collecting cases).

Courts have similarly established that neither the Virgin Islands nor Puerto Rico are "persons" under the Due Process Clause. *Virgin Islands v. Miller*, 2010 WL 1790213, at *5 (V.I. Super. May 4, 2010) (Virgin Islands "Government is not a person for purposes of due process."); *Puerto Rico Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urb. Dev.*, 59 F. Supp. 2d 310, 325 (D.P.R. 1999) (Puerto Rican government instrumentalities are not "persons" under the Due Process Clause).

The foregoing line of cases applies equally here. Plaintiffs allege "the PA is a non-sovereign governmental entity." (CJA Vol. I, p. 47 at ¶¶ 118-119). This fact is not in dispute; indeed, "[t]he PA was established by the 1993 Oslo Accords as the interim and non-sovereign government of parts of the West Bank and the Gaza

13

Strip." *Waldman v. PLO*, 835 F.3d 317, 322 (2d Cir. 2016).[4]  Therefore, as a governmental entity, the PA is not a "person" under the Due Process Clause.

Nor is the PLO a "person" under the Due Process Clause.  The PLO is a foreign political entity founded in 1964.  Its structure and operations are governed by the PLO's Basic Law, and it is controlled by a "Palestine National Council," consisting of several hundred members, and a smaller Executive Committee, which runs its day-to-day operations.  (CJA Vol. I, p. 44 at ¶ 108).  As its name reflects— "Palestine Liberation Organization"—the PLO's goal and raison d'être is to "liberate" territories it views as "Palestine," located in Israel, the West Bank, and Gaza.  (CJA Vol. I, pp. 45-46 at ¶ 114).

The Department of Justice ("DOJ"), too, has consistently taken the position that governmental entities generally – and the PLO specifically – are not "persons" within the meaning of the Due Process Clause.  A Memorandum Opinion prepared by the DOJ Office of Legal Counsel opined that "the rationale of *South Carolina v. Katzenbach*," where the Court held that a state is not a person within the meaning of the Due Process Clause, is fully applicable to other "governmental bodies," even when they are not "states or instrumentalities of states."  (CJA Vol. I, pp. 194-208) (Office of Legal Counsel, *Mutual Consent Provisions in the Guam Commonwealth*

---

[4]    The PA's legal status and the scope of its authority were analyzed in detail in *Knox v. PLO*, 306 F. Supp. 2d 424, 430-38 (S.D.N.Y. 2004) and *Ungar v. PA*, 315 F. Supp. 2d 164, 177-82 (D.R.I. 2004).

14

*Legislation: Memorandum Opinion for the Special Representative for Guam Commonwealth* (July 28, 1994) at 7.

The DOJ has similarly opined that "[w]hile *Katzenbach* was concerned with a State, its rationale suggests that a governmental body . . . could not assert rights under the Due Process Clause." (CJA Vol. I, p. 247 at n.13) (December 2007 Letter from Robert Raben, Assistant Attorney General, attached as App. E to *Report by the President's Task Force on Puerto Rico's Status*).

In *Puerto Rico Public Housing Administration*, the DOJ successfully argued that, as "political entities," instrumentalities of the government of Puerto Rico are not "persons" within the meaning of the Due Process Clause. (CJA Vol. II, pp. 278--313). The court agreed: "[T]he Court holds that PRPHA and PRDH ought to be treated as intrinsically part of the Commonwealth of Puerto Rico. Having reached said conclusion, it seems inevitable to regard PRPHA and PRDH as 'non-persons' for purposes of their constitutional claims." *Puerto Rico Pub. Hous. Admin.*, 59 F. Supp. 2d at 325.

The DOJ has correctly explained that: "Foreign entities such as the PLO obviously do not have due process rights since they are not part of our constitutional scheme." (CJA Vol. II, p. 367) (Appellees' Brief in *Palestine Info. Office v. Schultz*, No. 87-5396 (D.C. Cir. 1988)).

15

Similarly, the DOJ has opined that "[a]s a foreign political entity, the PLO does not itself enjoy constitutional protection . . . It is clear, for example, that the PLO would not be recognized by American courts as a juridical entity capable of bringing a constitutional claim. Neither will the argument that the PLO is not a sovereign nation bring it within the constitutional fold." (CJA Vol. II, p. 390) (excerpt from *Constitutionality of Closing the Palestine Information Office, an Affiliate of the Palestine Liberation Organization*, 11 Op. O.L.C. 104 (1987)) (citation omitted).

Moreover, in a recent decision examining the PA's and PLO's constitutional status, the District Court for the Southern District of New York reasoned that these Defendants are not protected by the Due Process Clause:

> It is inconsistent with our constitutional system … to extend due process protections to foreign governments. Our system leaves it to the political branches to decide how to deal with foreign governments, including whether to protect them from suit in U.S. courts. The Due Process Clause of the Fifth Amendment provides that "no *person* shall be ... deprived of life, liberty or property without due process of law. <u>The PLO and PA are not persons for purposes of constitutional due process</u>. The Supreme Court long ago explained that the word "person" in the context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union. The Second Circuit then made the manifestly correct observation that it would make no sense to place foreign states in a more favored position than U.S. states. … This reasoning should apply to the PLO and PA. … The executive has, in the past, structured relations based on its explicit understanding that the PLO and PA are not entitled to constitutional protections of any kind. I think that understanding was correct.

16

*Shatsky v. PLO*, 18-cv-12355 (MKV), 2022 WL 826409 at *5-6 (S.D.N.Y. Mar. 18, 2022) (cleaned up, emphasis added).

Notwithstanding its analysis of the issue, the district court in *Shatsky* felt bound by the Second Circuit's decision in *Waldman v. PLO*, 835 F.3d 317 (2d Cir. 2016), which held that the PLO and PA are entitled to due process protections. *Shatsky*, 2022 WL 826409 at *6.

In the district court below, Defendants relied heavily on *Waldman* and a case adopting it, *Livnat v. PA*, 851 F.3d 45 (D.C. Cir. 2017). Both are unpersuasive. *Waldman*'s resolution of this issue is telegraphic. The court simply notes, "sovereign states are not entitled to due process protection," and then immediately concludes, with no analysis or discussion: "Because neither defendant is a state, the defendants have due process rights." *Waldman*, 835 F.3d at 329. But this is a logical fallacy. The fact that sovereign states lack due process rights does not mean they are the <u>only</u> governmental entities that lack due process rights. To the contrary, as shown above, courts have found, and the Executive Branch has opined, consistently, that governmental entities—including Puerto Rico and the Virgin Islands, which are neither sovereign nor creatures or subdivisions of the States of the Union—are not "persons" under the Due Process Clause.[5]

---

[5]    *Waldman*'s erroneous disposition likely resulted from inadequate briefing on the issue. 835 F.3d at 329 (noting plaintiffs "d[id] not cite any cases indicating that

17

As for *Livnat*, that decision turns almost entirely on the *Livnat* plaintiffs' narrow argument that the D.C. Circuit could construe its holding in *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82 (D.C. Cir. 2002) – that foreign states have no Due Process rights – to also include non-sovereign foreign entities. *Livnat*, 851 F.3d at 48 ("[A]ppellants … urge us to extend *Price* to the Palestinian Authority by holding that *Price* applies not just to sovereign foreign states, but to any foreign entity that 'functions as a government.'"). *Livnat* rejected the invitation to read *Price* and its progeny more expansively, concluding "*Price*'s holding applies to sovereigns alone." *Livnat*, 851 F.3d at 52. While the D.C. Circuit is an authoritative arbiter of how to construe its <u>own</u> prior decisions, its finding that *Price* cannot be construed to encompass foreign non-sovereign governments sheds no light on the actual question of whether governmental entities have Due Process rights.

Moreover, the narrow focus in *Waldman* and *Livnat* on sovereignty is misplaced. The presence or absence of sovereignty is simply irrelevant to the question of whether a governmental entity is a "person" within the meaning of the Due Process Clause. The Virgin Islands are not sovereign, and neither is Puerto Rico. Nor do the States of the Union enjoy anything like the sovereignty of foreign state. Counties and cities are not sovereign. The false dichotomy of sovereignty-

---

a non-sovereign entity with governmental attributes lacks due process rights. All the cases cited by the plaintiffs stand for the proposition that sovereign governments lack due process rights").

18

versus-personhood created by *Waldman* and *Livnat* lacks any conceptual or jurisprudential rationale.[6]

In sum: sovereignty is not the flip-side of constitutional personhood; there is simply no inverse symmetry whatsoever between these two statuses.

Finally, as the district court in *Shatsky* explained, *Waldman* and *Livnat* are in error because they "paradoxically place[] the PLO and PA in a more favored position with respect to the safeguards of due process than both U.S. states and foreign sovereigns with whom the political branches have established friendly relations," and "stretching the Due Process Clause to protect foreign governments would create serious separation-of-powers problems in our constitutional system," and "Congress has repeatedly enacted legislation that leaves no doubt about its intention to define our jurisdiction to include ATA suits against the PLO and PA.  Yet the courts have interceded to protect the PLO and PA from suit." *Shatsky*, 2022 WL 826409, at *6 (cleaned up).

---

[6]     *Livnat* also misstates a putative precedent for its ruling that only sovereign states lack Due Process rights.  *Livnat* relies on *Toumazou v. Turkish Republic of Northern Cyprus*, No. 14-7170 (D.C. Cir. Jan. 15, 2016), and states that "we conducted the usual due-process inquiry" in *Toumazou*, even though the Turkish Republic of Northern Cyprus ("TRNC") is a non-sovereign foreign government. *Livnat*, 851 F.3d at 52.  In fact, *Toumazou* never addressed whether the TRNC is covered by the Due Process Clause.  (CJA Vol. II, pp. 399-400).  And the *Toumazou* plaintiffs simply assumed TRNC has Due Process rights.  (CJA Vol. II, pp. 402-423, 424-466).  Thus, the question of whether a non-sovereign government is a "person" for Due Process purposes was never raised or adjudicated in *Toumazou*.

19

The district court's decision in the instant case is equally infirm.  The court never analyzed the definition of the term "person" under the Due Process Clause; instead, it ruled simply that because Plaintiffs alleged the PA and PLO are each a "person" within the underlined statutory definition provided in ATA § 2331(3), Plaintiffs cannot argue the PA and PLO are not "persons" within the meaning of the Due Process Clause.  (CJA Vol. IV, pp. 993-994).[7]

This ruling is unfounded.  The definition of "person" under the Due Process Clause is not in any way dependent upon the ***statutory*** definition of that term for purposes of the ATA.[8]  The scope of "personhood" in the Due Process Clause and in ATA § 2331(3) are not co-extensive, and the construction of the Fifth Amendment Due Process Clause cannot be influenced – much less controlled – by a definition contained in a statute.  Plaintiffs alleged the PLO and PA are each a "person as

---

[7]    The district court erroneously referred to § 2331(3) as "[t]he definition of personhood within the PSJVTA."  (CJA Vol. IV, p. 994).  Section 2331(3) was enacted in 1992 as part of the ATA.  The PSJVTA was an amendment to the ATA enacted in 2019 and codified at 18 U.S.C. § 2334(e).  The PSJVTA left § 2331(3) undisturbed and does not even contain the term "person."

[8]    The ATA's definition is based on the definition in the RICO statute.  *See* Antiterrorism Act of 1990, Hearing Before the Subcommittee on Courts and Administrative Practice of the Committee on the Judiciary, United States Senate, 101st Congress, Second Session, July 25, 1990, Testimony of Joseph Morris, at 86, n.7.

20

defined in 18 U.S.C. § 2331." (CJA Vol. I., pp. 42-43 at ¶¶ 103-104).[9]  Plaintiffs also alleged neither the PLO nor the PA is a "person" within the meaning of the Due Process Clause.  (CJA Vol. I, pp. 26-27 at ¶¶ 9-11).  There is no contradiction whatsoever between these allegations.  Both are true.

The Court should therefore find that these Defendants lack Due Process rights, and personal jurisdiction was established in this case based upon Federal Rule of Civil Procedure 4(k)(2) and Defendants' waivers of service.

Additionally or alternatively, the Court should find that personal jurisdiction over Defendants has been established on the three additional bases discussed below.

## C.    Defendants Consented to Jurisdiction Under the PSJVTA

Even assuming arguendo that these Defendants had Due Process rights, the district court has personal jurisdiction over Defendants under the PSJVTA, 18 U.S.C. § 2334(e).

### 1.    Legislative Background

Congress enacted the ATA in response to the 1985 murder of Leon Klinghoffer by the PLO.  Klinghoffer was an elderly, wheelchair-bound Jewish American who was shot in the head and tossed overboard in his wheelchair by PLO terrorists who had hijacked the Achille Lauro cruise ship.  *Goldberg v. UBS*, 660 F.

---

[9]    The fact Defendants are "persons" under ATA § 2331(3) resolves the district court's dicta questioning "whether they can even be sued in the Tenth Circuit." (CJA Vol. IV, p. 999 at n.8).

Supp. 2d 410, 421-22 (E.D.N.Y. 2009) (PLO's murder of Klinghoffer was an "essential inspiration for the ATA."). Since Mr. Klinghoffer's murder, many more American citizens have been killed or injured by terrorist attacks carried out by or with the assistance of the PLO, and its governmental affiliate, the PA. As a result, numerous ATA actions have been brought against the PLO and PA in our federal courts over the past two decades. *Cf. Sokolow v. PLO*, 2015 WL 10852003 (S.D.N.Y. Oct. 1, 2015), *vacated on other grounds*, 835 F.3d 317 (2d Cir. 2016) (entering judgment on jury verdict finding the PLO and PA liable under the ATA for six terrorist attacks in Jerusalem in which five Americans were murdered).

Personal jurisdiction over the PLO and PA in these prior ATA cases was based on general personal jurisdiction, given the fact that the PLO and PA had offices and conducted extensive activities through the United States. However, in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Supreme Court "significantly narrowed" the test for general personal jurisdiction. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016). Following *Daimler*, courts found that the PLO and the PA were not subject to general jurisdiction and dismissed the ATA actions against them. *Waldman*, 835 F.3d at 337.

However, a third traditional basis for personal jurisdiction remained unimpaired by *Daimler*; defendants may consent to the exercise of personal jurisdiction. *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2038-2039 (2023)

4862-9234-7553, v. 1

(rejecting argument that the Due Process Clause tolerates only two types of personal jurisdiction).  In response to the Second Circuit's *Waldman* decision finding that personal jurisdiction was lacking over the PLO and the PA, the political branches responded by enacting remedial legislation to enable terrorism actions to proceed against these Defendants. This legislation culminated in the passage of the PSJVTA.

### 2.    The PSJVTA's Statutory Predicates Have Been Triggered

The PSJVTA provides that the PLO and PA submit to personal jurisdiction in ATA cases if they: (1) made payments after April 18, 2020, to persons who were convicted or pled guilty and were imprisoned for terrorism that harmed a U.S. national (or made payments to the families of persons killed in such attacks); (2) maintained "any office … in the United States" after January 4, 2020, except for one used exclusively for official United Nations ("UN") business; or (3) engaged in "any activity while physically present in the United States" after January 4, 2020, not exempted by the PSJVTA.

Plaintiffs alleged in detail in their FAC, on the basis, inter alia, of documents produced to Plaintiffs by Defendants, that Defendants had triggered all three of the PSJVTA's statutory predicates for jurisdiction.  (CJA Vol. I, pp. 29-32 at ¶¶ 18-25).

In response, Defendants freely admitted to triggering the "payment" prong of the PSJVTA, and rested their challenge to personal jurisdiction under the PSJVTA

solely on constitutional grounds, and asked the court to proceed directly to the constitutional question.  (CJA Vol. I, pp. 92-93 at n.4).[10]

Thus, since the statutory predicates are satisfied, if the Court finds the PSJVTA constitutional, personal jurisdiction over Defendants will be established.

### 3.    The District Court's Ruling is Erroneous

The district court found that the PSJVTA is unconstitutional because "Congress cannot simply legislate that any conduct, without regard for its connections to the United States generally or to litigation in the United States specifically, signals a party's intent to submit to the jurisdiction of a United States court."  (CJA Vol. IV, p. 992) (cleaned up, citation omitted).

This holding is erroneous for several reasons:

*First*, a defendant need not have "intent" to submit to jurisdiction in order to be statutorily deemed to have consented to jurisdiction.  The Supreme Court has expressly held that "[t]he actions of the defendant may amount to a legal submission to the jurisdiction of the court, <u>whether voluntary or not</u>."  *Ins. Corp. of Ireland v.*

---

[10]    Defendants claimed baldly in a footnote that they did not trigger submission to jurisdiction under the U.S.-activities prongs of the PSJVTA because all their U.S. activities fall within the PSJVTA's exception relating to UN activities.  (CJA Vol. I, pp. 98-99 at n.7).  However, this ipse dixit assertion, unsupported by affidavits or other evidence, does not meet Defendants' burden to respond to Plaintiffs' jurisdictional allegations. "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (cleaned up).

24

*Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704-05 (1982) (emphasis added). Thus, there is no requirement that a defendant's submission to personal jurisdiction be "voluntary," in the sense that the defendant must agree, or must be deemed to have agreed, to the personal jurisdiction of the court. The action by which a defendant submits to jurisdiction must be <u>volitional</u> (as opposed to coerced or oblivious), but it is irrelevant whether the defendant <u>willingly</u> submits to jurisdiction by taking that volitional action.

Thus, for example, Rule 12(h)(1) of the Federal Rules of Civil Procedure provides that a defendant waives a defense of lack of personal jurisdiction if she fails to assert it at the first opportunity. Rule 12(h)(1) is an "automatic waiver provision." *Flory v. United States*, 79 F.3d 24, 25 (5th Cir. 1996). Rule 12(h) neither requires nor allows a court to examine the defendant's "intent" to submit to jurisdiction. Indeed, courts enforce a Rule 12(h) waiver even when the defendant <u>affirmatively</u> <u>negates her willingness to submit to jurisdiction</u> by simultaneously purporting to reserve a personal jurisdiction defense. *Boston Telecomm. Grp., Inc. v. Deloitte Touche Tohmatsu*, 249 Fed. App'x 534, 536 (9th Cir. 2007) (defendant waived his right to assert the defense of personal jurisdiction where he did not raise it in his first motion to dismiss, even though he stated in his brief that he "reserves his rights and objections to file a supplemental motion to dismiss" based on personal jurisdiction); *CGHH, LLC v. Cesta Punta Deportes, S.A. de C.V.*, 2006 WL 8430970, at *3 (N.D.

25

Ga. Mar. 31, 2006) ("Defendants' motion to 'preserve' their Rule 12 defenses does nothing to dissuade this Court that the general principle of Rule 12(g) that those defenses not raised in a single, consolidated motion under Rule 12 are forever waived should not apply."); *Hunter v. Serv-Tech, Inc.*, 2009 WL 2858089, at *3 (E.D. La. Aug. 28, 2009) (litigant cannot "reserve" a 12(b)(2)-(5) defense).

The PSJVTA is constitutional for the same reason Rule 12(h) is, namely: a defendant may <u>unwillingly</u> submit to jurisdiction by its conduct, as long as it has fair warning. Here, Defendants admit that they elected to make payments that they knew would constitute statutory submission to jurisdiction under the PSJVTA. The fact that Defendants did so while simultaneously objecting to jurisdiction on constitutional grounds—in effect, challenging the court to a game of "chicken"—is no more legally effective than the protests made by those defendants (in the cases cited above), who purported to negate the effect of Rule 12(h) by objecting while engaging in conduct that constituted submission to jurisdiction under that Rule.

***Second***, contrary to the district court's statement, in the PSJVTA Congress did not "simply legislate that any conduct" constitutes consent to personal jurisdiction. Rather, Congress provided that two very narrow and specific types of conduct by these Defendants would trigger consent to jurisdiction.

The first type of conduct encompassed by the PSJVTA, conducting activities and maintaining offices within in the United States, is exactly the type of

jurisdiction-triggering conduct found constitutional by the Supreme Court in *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028 (2023). *Mallory* puts firmly to rest any claim that the U.S.-activities prongs of the PSJVTA are unconstitutional.

The second type jurisdiction-triggering conduct contained in the PSJVTA – payments made to terrorists or the families of terrorists who killed or injured American citizens – is a matter of profound concern to the United States.

For decades, these Defendants have maintained a practice and program (known as "Pay-for-Slay") of paying benefits to relatives of terrorists killed while carrying out deadly terrorist attacks, and to family members of terrorists who were imprisoned after pleading guilty to or being tried and convicted for executing such attacks. (CJA Vol. I, pp. 29-31 at ¶¶ 18-23 ). Scores of U.S. citizens were murdered or injured in the terrorist attacks for which Defendants make these Pay-for-Slay payments. (*Id*. p. 31 at ¶ 22).

Congress has determined that "[t]he Palestinian Authority's practice of paying salaries to terrorists serving in Israeli prisons, as well as to the families of deceased terrorists, is an incentive to commit acts of terror." Taylor Force Act, Pub. L. No. 115-141, § 1002(1) (Findings) (22 U.S.C. § 2378c-1 note) (Mar. 23, 2018) (emphasis added). Congress has demanded these Defendants "stop payments for acts of terrorism by individuals who are imprisoned after being fairly tried and convicted for acts of terrorism and by individuals who died committing acts of terrorism," and

27

conditioned aid to Defendants on the termination of these payments. *Id.* at § 1003(1), § 1004. (CJA Vol. I, p. 30 at ¶ 19).

Given that Congress has found that payments by these Defendants to family members of persons who committed acts of terrorism that killed or injured U.S. nationals incentivize terrorist actions, it is fair, reasonable and entirely constitutional for Congress to deem the Defendants' continuation of such payments to constitute their consent to personal jurisdiction in U.S. courts on civil claims for the very same type of conduct.

Furthermore, the Fifth Amendment permits federal courts to exercise personal jurisdiction over foreign defendants in circumstances that are not shared by state courts exercising personal jurisdiction under the Fourteenth Amendment. Application of the Fourteenth Amendment reflects not only concerns about fairness to defendants but also issues of federalism and the limited sovereignty of the states. That federalism interest does not apply to the United States, which has authority over national security and foreign affairs and, unlike a state, power "to enforce its laws beyond [its] territorial boundaries." *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991). Therefore, while "[t]he limits of [an individual U.S. state's] power are defined in view of the relation of the states to each other in the Federal Union," the United States' power "in relation to other countries and their subjects" is

28

informed by "the principles of jurisdiction recognized in international relations." *Burnet v. Brooks*, 288 U.S. 378, 396, 403-06 (1933).

The United States' position as a sovereign and its exclusive competence in matters of foreign affairs and national security must inform the question of whether a federal court's exercise of jurisdiction over a foreign defendant pursuant to congressional authorization is fair and reasonable, and those considerations should guide the analysis of what conduct is fair for Congress to deem consent to jurisdiction in U.S. courts on a particular type of claim.

Therefore, the PSJVTA is constitutional.

### D. The Court Has Specific Personal Jurisdiction Over the Defendants Because Their Extensive U.S.-Based Activities "Relate to" Plaintiffs' Claims in This Action

The district court also erred as a matter of law in ruling it lacked specific personal jurisdiction over Defendants.  Specific jurisdiction exists where: (1) the defendant "purposefully avails itself of the privilege of conducting activities within the forum," and (2) the plaintiff's claims "relate to the defendant's contacts with the forum."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024-25 (2021) (internal quotations and citations omitted).  Put differently, "there must be an affiliation between the forum and the underlying controversy[.]"  *Id.* (internal quotations omitted).

29

The "relate to" test "does not require proof of causation between a plaintiff's suit and a defendant's activities." *Ditter v. Subaru Corp.*, 2022 WL 889102, at \*2 (D. Colo. Mar. 25, 2022) (cleaned up, citing *Ford*). "A plaintiff can meet the 'relate to' component . . . by showing that any of the defendant's contacts with the forum are relevant to the merits of plaintiff's claim." *Titan Feeding, LLC v. Corey Cattle Co., LLC*, 2022 WL 4182458, at \*7 (D. Colo. Sept. 13, 2022) (cleaned up, emphasis added).[11]

Both prongs of the specific jurisdiction test are satisfied here. **First**, at the time of the Attack, and for years prior, Defendants maintained an office and a large staff in the United States, through which they carried out extensive activities within the United States. (CJA Vol. I, pp. 28-29, 46-49, 54-57). It is axiomatic that by choosing to maintain an actual office and staff within the United States, Defendants

---

[11]    *Cf. Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755, 759 (Fed. Cir. 2016) ("relatedness" depends on "the nature of the claim asserted"); *In re Nexus 6P Prod. Liab. Litig.*, 2018 WL 827958, at \*4 (N.D. Cal. Feb. 12, 2018) ("As the U.S. Supreme Court emphasized, specific jurisdiction requires a careful examination of the nature of the asserted claims."); *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 175 (D.D.C. 2018) ("The contours of plaintiffs' claims dictate what constitutes suit-related conduct."); *Havel v. Honda Motor Eur. Ltd.*, 2014 WL 4967229 at \*10 (S.D. Tex. Sept. 30, 2014) ("the connection between a defendant's suit-related conduct and the forum state will clearly be strongest when that conduct forms one of the elements of the intentional tort alleged"). However, the Supreme Court did "not limit 'suit-related conduct' to the *elements* of a tort." *Havel*, at \*10 (emphasis in the original). Thus, while conduct satisfying an element of the claim is "suit-related," "relatedness" is not limited to the elements of the claim.

"purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum." *Ford*, 141 S. Ct. at 1024-25 ("defendant . . . must take some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State[;] . . . [t]he contacts must be the defendant's own choice and not 'random, isolated, or fortuitous[,]'" . . . [and] must show that the defendant deliberately 'reached out beyond its home").[12]

*Second*, Defendants' activities in the United States "relate to" Plaintiffs' ATA claims because they are relevant to the underlying merits of such claims. The ATA creates a cause of action for Americans harmed "by reason of an act of international terrorism." 18 U.S.C. § 2333(a). The ATA defines "international terrorism" as "activities that … appear to be intended— (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping." § 2331(1)(B). Thus, the ATA does not create suits for pointless violence; rather, by definition, the "activities" from which an ATA action arises must appear to have been intended to impact "a government" (any government) and/or a "civilian population" (any civilian population).

---

[12]    Because the ATA permits nationwide service of process, the relevant "forum" for personal jurisdiction analysis is the United States as a whole. *See Klieman v. PA*, 923 F.3d 1115, 1120 (D.C. Cir. 2019), *vacated on other grounds*, 140 S. Ct. 2713 (2020); *Cohen v. Facebook*, 252 F. Supp. 3d 140, 153 (E.D.N.Y. 2017).

31

Here, Plaintiffs allege Defendants engaged in U.S.-based conduct "related to" their ATA claim sufficient to establish specific jurisdiction over them.  Plaintiffs allege: (1) Defendants seek to obtain territorial concessions from Israel (CJA Vol. I., pp. 22-76 at ¶¶ 114-115, 121-122); (2) Defendants' policy and practice seeks to use terrorism and the threat of further terrorism to obtain Israeli concessions, and the Attack was carried out pursuant to that long-standing policy and practice (*Id.* at ¶¶ 114-115, 121-122, 150-153, 173-175); (3) Defendants admit they cannot extract concessions from Israel on their own and thus need the U.S. public and government to use their sway with Israel to convince it to make concessions (*Id.* at ¶¶ 116-117, 123-124, 153); (4) to cause the U.S. public and government to influence Israel to make concessions, Defendants used a double-pronged strategy – employing terrorism to provoke the interest and concern of the U.S. public and government about Middle East peace, and maintaining an office and staff in Washington, D.C. that for years promoted and reiterated to U.S. public and government the argument that ending the violence required Americans to use their leverage with Israel to make concessions to Defendants.  (*Id.* at ¶¶ 14-15, 116-117, 123-124; 150-153).

As this makes clear, Defendants strategically use violence and the threat of more violence for a very specific, non-pecuniary and rational (though appalling) reason – to achieve their political goals.  But Defendants have made equally clear that violence alone cannot move Israel to make concessions.  In Defendants' own

32

words, "Israel is the stronger party in the equation.  Palestinians have no way of forcing Israel to accept anything.  … Do you think we would be able to force Israel to do things that they don't want to do?"  (CJA Vol. I, pp. 46-49 at ¶¶ 116, 123).

Therefore, to achieve its purpose, Defendants needed to couple the violence with messaging—from Defendants' U.S.-based personnel and directed to the American public and government—that the violence will end only when Israel makes the concessions Defendants seek.  Thus, Defendants' U.S.-based officials stated that they want "Americans to understand" that "Palestinians are not looking to incite anything," but "incitement and violence are a consequence of occupation. Once the occupation ends, so will all the negative behavior," and widely repeated this message to the American public for years before the Attack.  (CJA Vol. I., p. 56 at ¶ 151).

As Defendants' entire course of conduct and overall strategy establishes, Defendants' U.S.-based propaganda activities bore a direct, purposeful, and strategic relationship to their use of and provision of material support for terrorist violence. Their use of violence to achieve political goals cannot be artificially separated from the political messaging conducted in the U.S. that Defendants employed as a necessary complement to their violence.

Plaintiffs' allegations satisfy the elements of ATA § 2331(1)(B) because Defendants' U.S. activities appeared to be and were intended to influence the United

States government and the American public. (CJA Vol. I., pp. 64 at ¶ 183, 68 at ¶ 201). Thus, Defendants' U.S.-based conduct—the influence campaign conducted by their D.C. office and personnel—<u>fulfills a statutory element</u> of Plaintiffs' ATA claims, and that conduct therefore "relates to" Plaintiffs' claims here. *Titan Feeding*, 2022 WL 4182458, at *7 ("relatedness" exists if "any of the defendant's contacts with the forum are relevant to the merits of plaintiff's claim."); *Havel*, 2014 WL 4967229, at *10 (relatedness "will clearly be strongest" when the defendant's in-forum conduct constitutes "one of the elements of the intentional tort alleged.") In other words, Plaintiffs allege the Attack was carried out <u>further to and as part and parcel</u> of Defendants' decades-long policy and practice of supporting and facilitating terrorism to achieve their political goals, and that Defendants' extensive U.S.-based activities were closely "related to"—indeed, were a necessary complement to—their use of terrorism to obtain their political goals. These uncontested allegations satisfy the "relatedness" requirement.

Defendants do not dispute these factual allegations establishing specific jurisdiction.[13] To the contrary, Defendants admitted their Washington D.C. office

---

[13] "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavit*." Wenz*, 55 F.3d at 1505 (cleaned up). At this stage of the case, Plaintiffs "need only make a prima facie showing that jurisdiction exists," and that "burden is light." *Id*. Below, Defendants disputed only "their alleged involvement in attacks" (CJA Vol. I., p. 102) but did not dispute the factual allegations regarding the existence of their U.S.-based propaganda activities

had a multi-million-dollar budget and engaged in extensive activities, including "promotion of 'the Palestinian cause in speeches and media.'"  (CJA Vol. I., pp. 103-104) (quoting factual findings in *Waldman*).

In the district court, Defendants predicated their challenge to specific jurisdiction solely on *Waldman*, *Livnat*, *Klieman v. PA*, 923 F.3d 1115 (D.C. Cir. 2019) and *Shatsky v. PLO*, 955 F.3d 1016 (D.C. Cir. 2020), arguing those cases considered and rejected Plaintiffs' argument.  (CJA Vol. I., pp. 102-104).

But *Waldman*, *Livnat*, *Klieman* and *Shatsky* applied legal grounds later overruled by *Ford*.  Before *Ford*, most courts interpreted the traditional "arise out of or relate to" test for specific jurisdiction as requiring some <u>causal</u> connection between the defendant's activities and the plaintiff's claim.  But *Ford* clarified that under the "relate to" prong, specific jurisdiction may be established without a causal showing.  *Ditter*, 2022 WL 889102 at \*2 (D. Colo. Mar. 25, 2022) (after *Ford*, "relate to" test "does not require proof of causation between a plaintiff's suit and a defendant's activities" in the forum).

*Waldman* is inapposite because it never discusses the "relate to" prong and focuses exclusively on the "arises from" prong.  *Waldman*, 835 F.3d at 343 ("plaintiffs' claims did not arise from the defendants' purposeful contacts with the

---

and the purpose served by those activities as a necessary element for achieving the goals of their overall terrorist program.

4862-9234-7553, v. 1

forum"). *Waldman* also rejected specific jurisdiction because Defendants' U.S.-based conduct itself was not tortious. *Id.* at 342 ("the connections the defendants do have with the United States—the Washington, D.C. and New York missions—revolve around lobbying activities that are not proscribed by the ATA."). But no legal basis exists for grafting a "tortious-activity-in-the-forum" requirement onto specific jurisdiction jurisprudence. Indeed, *Ford* establishes that in a purposeful-availment case, the defendant's in-forum conduct itself need not be wrongful or tortious. The *Ford* defendant's in-forum activities involved only innocent sales and advertising activities. *Id.* at 1027-28. *Cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) (basing personal jurisdiction on a course of non-tortious business dealings in the forum).

Moreover, Defendants' U.S. activities in this case constitute and satisfy a defined statutory element of Plaintiffs' ATA claim—*i.e.*, § 2331(1)(B)—as discussed above.

*Waldman*'s progeny – *Livnat*, *Klieman* and *Shatsky* – are inapposite for similar reasons. In those cases, the D.C. Circuit predicated its holdings on the respective plaintiffs' failure (despite having completed discovery) to show that the Defendants' U.S.-contacts related to the particular terrorist attacks in which they suffered injury. *Livnat*, 851 F.3d at 57 (no specific jurisdiction because plaintiffs had not shown a link between Defendants' U.S.-related conduct and the particular

36

attack); *Klieman*, 923 F.3d at 1124 (following *Livnat* and finding "Plaintiffs have not alleged tangible facts as to how *this* attack was intended (or even used ex post) to further defendants' political aims in the United States."); *Shatsky v. PLO*, 955 F.3d at 1037 (following *Livnat* and *Klieman* and dismissing because there was no "evidence in the record connecting the Karnei Shomron bombing to the alleged public relations campaign.").

*Ford* rejected the type of analysis applied in *Livnat*, *Klieman* and *Shatsky*— *i.e.*, that an ATA plaintiff must show a tie between the Defendants' U.S. activities and the <u>particular</u> terrorist attack that injured her. Applying that analysis to the facts of *Ford* would mean the *Ford* plaintiffs needed to show that Ford's in-forum sales and advertising related to the <u>particular vehicles</u> that harmed the plaintiffs. But the Supreme Court rejected any such requirement.

Importantly, the *Ford* rule—that Due Process permits "relatedness" without causation—is not limited to a particular cause of action or set of circumstances. While *Ford* happened to involve a product liability suit, courts applying *Ford* have noted "the pitfalls of trying to compare the relatedness of contacts to a given forum in different tort claims for jurisdictional analysis," and cautioned against restricting the "relatedness" holding in *Ford* to the specific circumstances or causes of action in that case. *Bibbs v. Molson Coors Beverage Co. USA, LLC*, 616 F. Supp. 3d 606, 615 n. 2 (N.D. Tex. 2022).

37

Here, the district court held that specific jurisdiction is lacking without addressing any of Plaintiffs' arguments.  The court's rationale for its ruling is a single sentence: "The actions by Defendants (especially actions taken in Israel) are not sufficiently connected to the United States or even the state of Colorado." (JA977)

Accordingly, this Court should find that the district court has specific personal jurisdiction over the Defendants in this action.

### E.     The Court Has Jurisdiction Under Federal Rule of Civil Procedure 23.2

Alternatively, the district court should have exercised personal jurisdiction over the Defendants under Federal Rule of Civil Procedure 23.2. That rule authorizes a "proceeding in the nature of a class action" as a vehicle for lawsuits by or against unincorporated associations.  7C C. Wright, A. Miller & E. Cooper, Fed. Prac. & Proc. Civ. § 1861 (3d ed.) (April 2022 update).  Actions under Rule 23.2 are similar to class actions in that they are brought by or against a litigation class "by naming certain members as representative parties."  *See* Fed. R. Civ. P. 23.2.  Actions under Rule 23.2 are also similar Rule 23 class actions in that both allow courts to exercise personal jurisdiction over an entire litigation class based upon facts supporting jurisdiction over the representative member. "[A] court has jurisdiction over an unincorporated association pursuant to Rule 23.2 Fed.R.Civ.P. on the basis of personal jurisdiction over the named class representatives." *Battle Fowler v. Brignoli*, 765 F. Supp. 1202, 1204 (S.D.N.Y.), *aff'd*, 952 F.2d 393 (2d Cir. 1991)

38

(citing 7C C. Wright, A. Miller, M. Kane, Fed. Prac. and Proc.: Civil 2d § 1861 at 216 (1986)). *Cf. Resol. Tr. Corp. v. Deloitte & Touche*, 822 F. Supp. 1512 (D. Colo. 1993) (asserting personal jurisdiction over association under Rule 23.2 based upon jurisdiction over representative member).

Here, Plaintiffs allege the PA and the PLO are unincorporated associations (CJA Vol. I., pp. 32-33) and named Riyad Mansour, a member of both the PA and the PLO, as the representative defendant for both associations.  Mansour is a domiciliary of the United States and service was effected at Mansour's home address in Florida pursuant to 18 U.S.C. § 2334(a) and Federal Rule of Civil Procedure 4(k)(1).[14]  (CJA Vol. I, p. 33).  Therefore, the district court had general personal jurisdiction over Mansour.  *See Ford*, 141 S. Ct. at 1024 ("an individual is subject to general jurisdiction in her place of domicile").  And under Rule 23.2, the district court's general personal jurisdiction over Mansour enables it to assert personal jurisdiction over the unincorporated association Defendants, the PLO and the PA. *Battle Fowler*, 765 F. Supp. at 1204; *Resol. Tr. Corp.*, 822 F. Supp. at 1515.

The district court failed to recognize that Rule 23.2 authorizes it to assert personal jurisdiction over the PA and the PLO based upon its general jurisdiction over Mansour as a domiciliary of the United States.  The district court ruled: "This

---

[14]     Defendants conceded that the PA and PLO waived service of process and that Mansour was served at his home address in Florida.  (CJA Vol. IV, p. 968).

rule [23.2] does not create personal jurisdiction over Defendants when there is a lack of consent, general personal jurisdiction, or specific personal jurisdiction." (CJA Vol. IV, p. 978). In other words, the court relied entirely upon its personal jurisdiction analysis regarding the PA and the PLO, *in their own right*, rather than analyzing personal jurisdiction over the PA and the PLO pursuant to Rule 23.2 based upon *Mansour's* status as a U.S. domiciliary. The district court also mistakenly ruled that a Rule 23.2 action against unincorporated associations must be brought as a formal class action under Rule 23. (CJA Vol. IV, p. 999). Both rulings misunderstand the purpose and operation of Rule 23.2.

Federal courts have long held that a plaintiff may sue an unincorporated association using the *form* of a class action, even where personal or subject matter jurisdiction might be lacking had the plaintiff sued the association as an entity or by naming each individual member. *See e.g.*, *Calagaz v. Calhoon*, 309 F.2d 248 (5th Cir. 1962); Wright, Miller & Cooper, Fed. Prac. & Proc. Civ. § 1861. Wright & Miller explain that unincorporated associations may be sued in different ways, and that a plaintiff's choice may determine the extent of a court's jurisdiction. *Id*. When the suit is brought as a class action, "service must be made only upon the named representatives <u>and the court may proceed on the basis of its personal jurisdiction over the named representatives</u>." *Id*. Thus, "treatment of unincorporated associations as classes provides substantial benefits from the perspective of personal jurisdiction,

40

venue, and subject-matter jurisdiction." *Id*.; *Cf.* 5 Moore's Federal Practice - Civil § 23.2.02

Prior to the 1966 adoption of Rule 23.2, the Federal Rules of Civil Procedure allowed unincorporated associations to sue and be sued as litigation classes under the general language of Rule 23. *Cf. Calagaz*, 309 F.2d at 252 (finding plaintiff and defendant, both of which were unincorporated associations, to be properly designated as litigation classes under Rule 23(a)); Wright, Miller & Cooper, Fed. Prac. & Proc. Civ. § 1861; David Marcus, *The History of the Modern Class Action, Part I: Sturm Und Drang, 1953-1980*, 90 WASH. U. L. REV. 587, 600 (2013) (noting that the 1938 version of Rule 23 allowed "true" class actions, which included those involving unincorporated associations). *Calagaz* held that the class designation provided the plaintiff and defendant associations with capacity to sue and to be sued. It also held that personal jurisdiction over the defendant <u>association</u> was established based upon the court's personal jurisdiction over the <u>named member/class representative</u>. *Id*. at 253.

In 1966, Rule 23.2 was enacted to continue the prior practice of allowing a class action mechanism to be used as to unincorporated associations while recognizing certain differences that made the stringencies of Rule 23 inapplicable to actions involving unincorporated associations. *Sembach v. McMahon Coll., Inc.*, 86 F.R.D. 188 (S.D. Tex. 1980); Benjamin Kaplan, *Continuing Work of the Civil*

41

*Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv. L. Rev. 356, 387 and notes 118-119 (1967). Thus, Rule 23.2 continues to provide litigants with many advantages of typical Rule 23 class actions, including: (a) expanding the number of districts where venue is proper; (b) empowering a plaintiff to name only those association members whose citizenship will not disturb diversity jurisdiction; and, as relevant here, (c) permitting a court to exercise personal jurisdiction over a class representative and thereby obtain jurisdiction over the unincorporated association, which might otherwise be beyond the court's jurisdiction. *Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 87 (2d Cir. 1990); *see also*, Moore's § 23.2.04 (identifying venue, subject matter jurisdiction, and personal jurisdiction among the procedural advantages of suing unincorporated associations under Rule 23.2); *Resol. Tr. Corp.*, 822 F. Supp. at 1515 (personal jurisdiction over association based upon jurisdiction over representative member); *Battle Fowler*, 765 F. Supp. at 1204 (same). Wright & Miller explicitly note that suing an unincorporated association as a class may facilitate the court's exercise of personal jurisdiction over the association. "[W]hen the association is a defendant, plaintiff's ability to select the class representatives enables plaintiff to choose adversaries, which is helpful for purposes of securing personal jurisdiction." Wright, Miller & Cooper, Fed. Prac. & Proc. Civ. § 1861.

Therefore, the district court has personal jurisdiction over the Defendants pursuant to Rule 23.2.

## II.    The Court Should Reinstate Plaintiffs' Nonfederal Claims

### A.    Standard of review

This Court reviews de novo the dismissal of Plaintiffs' nonfederal claims for lack of subject matter jurisdiction.  *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009).

### B.    The district court predicated dismissal of Plaintiffs' nonfederal claims on its erroneous personal jurisdiction ruling and thus this Court should reinstate the nonfederal claims

Having found that it lacked personal jurisdiction over Defendants, the district court then exercised its discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise *subject-matter* jurisdiction over Plaintiffs' nonfederal claims, on the ground that all the federal claims had been dismissed for lack of personal jurisdiction.  (JA978-979).

But Plaintiffs asserted supplemental personal jurisdiction for their nonfederal claims on the basis of their federal claims (CJA Vol. I, p. 37), and Defendants moved to dismiss the entire FAC (all of Plaintiffs' claims) for lack of *personal* jurisdiction (CJA Vol. I, pp. 88-89).  It is thus unclear why, after finding personal jurisdiction lacking, the district court did not automatically dismiss the nonfederal claims for lack of personal jurisdiction, and instead reached out and exercised its discretion to

43

dismiss the nonfederal claims for lack of subject-matter jurisdiction under § 1367(c)(3).

Regardless of the rationale for this ruling, the nonfederal claims should be reinstated. The court below dismissed the nonfederal claims on the sole ground that the federal claims had been dismissed for lack of personal jurisdiction; however, for the reasons above, the court does have personal jurisdiction over Defendants. It is clear, and it was undisputed below, that "the non-federal claims and the ATA claims derive from a common nucleus of operative fact." (CJA Vol. I, pp. 5, 37). The court therefore has supplemental personal and subject-matter jurisdiction over the nonfederal claims.

Accordingly, this Court should reinstate the nonfederal claims.

## <u>CONCLUSION</u>

For the reasons above, this Court should vacate the district court's decision in its entirety and remand this action for further proceedings.

4862-9234-7553, v. 1

By: *s/ Chip G. Schoneberger*
Chip G. Schoneberger
Daniel K. Calisher
Michael A. Rollin
FOSTER GRAHAM MILSTEIN &
CALISHER, LLP
360 South Garfield Street, 6th Floor
Denver, CO 80209
Telephone:  (303) 333-9810
cschoneberger@fostergraham.com
calisher@fostergraham.com
mrollin@fostergraham.com
*Counsel for Plaintiffs-Appellants*

By: *s/ Asher Perlin*
Asher Perlin, Esq.
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
Telephone: (786) 687-0404
asher@asherperlin.com
*Counsel for Plaintiffs-Appellants*

45

## <u>ORAL ARGUMENT STATEMENT</u>

Plaintiffs-Appellants request oral argument.  This appeal involves multiple complex constitutional issues of far-reaching importance.  Oral argument will assist the Court in reaching its decision.

4862-9234-7553, v. 1

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

**Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type Style Requirements**

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

> [X] this document contains 10,473 words, or
> [] this brief uses a monospaced typeface and contains <state the number of lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> [X] this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO version 2304 in 14 pt. Times New Roman, or
> [ ] this document has been prepared in a monospaced typeface using <state name and version of word processing program> with <state number of characters per inch and name of type style>.

Date: January 29, 2024

*s/ Chip G. Schoneberger*
Chip G. Schoneberger
360 S. Garfield Street, 6th Floor
Denver, Colorado 80209
303-333-9810
cschoneberger@fostergraham.com

*Attorney for Appellants Chaya Werfel, et al.*

47

## <u>CERTIFICATE OF SERVICE</u>

I, Chip G. Schoneberger, attorney for appellants, hereby certify that on January 29, 2024, I served a copy of the foregoing **Appellants' Opening Brief**, to counsel for appellees and counsel for Intervenor United States of America, via the court's electronic-filing CM/ECF system.


Date: January 29, 2024

                      *s/ Chip G. Schoneberger*
                      Chip G. Schoneberger
                      360 S. Garfield Street, 6th Floor
                      Denver, Colorado 80209
                      303-333-9810
                      cschoneberger@fostergraham.com

                      *Attorney for Appellants Chaya Werfel, et al.*

48

# **<u>ATTACHMENTS</u>**

Order dated August 23, 2023

Final Judgment dated August 23, 2023

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 21-cv-03043-GPG-STV

SHELLEY LEVINE, et al.,

      Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION;
THE PALESTINIAN AUTHORITY (a/k/a "The Palestinian Interim Self-Government
Authority" and/or "The Palestinian National Authority"); and
RIYAD MANSOUR, as the representative of The Palestine Liberation Organization
and The Palestinian Authority,

      Defendants.

---

# ORDER

---

Before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint

under Rule 12(b)(2) and Rule 12(b)(6) (D. 58).  The Court GRANTS the motion for the following

reasons.

## I. FACTS

This civil action arises from a terrorist attack in a synagogue in the Israeli Har Nof

neighborhood of Jerusalem on November 18, 2014 (D. 50 at 38).[1]  Plaintiffs allege that two

operatives of the Popular Front for the Liberation of Palestine (PFLP), Uday Abu Jamal and

Ghassan Abu Jamal, carried out a terrorist attack and killed several worshippers at the synagogue

(some of whom were also American citizens).  The victims included Rabbi Aryeh Kupinsky, Rabbi

---

[1] The Court draws the operative facts as set forth in Plaintiffs' First Amended Complaint (D. 50).

Moshe Twersky, Rabbi Abraham Goldberg, Rabbi Kalman (Cary) Levine, and Police Sergeant Zidan Saif.  The suspects also seriously injured Dr. Norman Heching and Rabbi Saul Goldstein (*id.* at 38-39).  This civil action is brought by the personal representatives of the estates of U.S. citizens Rabbi Kalman (Cary) Levine, Rabbi Aryeh Kupinsky, and Rabbi Moshe Twersky as well as of non-U.S. citizens Zidan Saif and Rabbi Abraham Goldberg (*id.* at 4).

Rather than bringing this civil action against the estate of Uday Abu Jamal and Ghassan Abu Jamal or the PFLP, Plaintiffs are suing the Palestine Liberation Organization (PLO) (claiming that it is a front for the PFLP), the Palestinian Authority (PA), and Riyad Mansour (as representative of the PLO and PA) pursuant to the Promoting Security and Justice for Victims of Terrorism Act of 2019 (PSJVTA), under 18 U.S.C. §§ 2333, 2334, and the Antiterrorism Act (ATA), under 18 U.S.C. § 2331.  Plaintiffs assert that this Court has original subject matter jurisdiction over Plaintiffs' ATA claims under 18 U.S.C. §§ 2331, 2333, 2334, and 2338 along with 28 U.S.C. § 1331, as well as supplemental subject matter jurisdiction over their Israeli-law claims under 28 U.S.C. § 1367.

Plaintiffs raise six claims:  (1) direct liability for international terrorism under 18 U.S.C. § 2333(a); (2) respondeat superior liability for international terrorism under 18 U.S.C. § 2333(a); (3) aiding and abetting under 18 U.S.C. § 2333(d); (4) conspiracy under 18 U.S.C. § 2333(d); (5) negligence under Israeli law, Civil Wrongs Ordinance (CWO) § 35; and (6) vicarious liability under CWO § 12 (*id.* at 42-54).  Defendants argue, inter alia, that exercising jurisdiction over them would violate due process and that the PSJVTA does not establish valid personal jurisdiction via the Due Process Clause of the Fifth Amendment (D. 58).

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), if a court is without personal jurisdiction over a party, the court cannot render a valid judgment.  Fed. R. Civ. P. 12; *see J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1058 (D. Colo. 2021).  The plaintiff bears the burden of establishing that the federal court has jurisdiction over the defendant.  *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).  To avoid dismissal, the plaintiff must make a prima facie showing of personal jurisdiction and must point to well-pleaded factual allegations, both in the complaint and in any supporting affidavits, that would support jurisdiction over each defendant.  *Gould v. Wyse*, No. 22-2075, 2023 WL 4994511, at *2 (10th Cir. Aug. 4, 2023).  When deciding personal jurisdiction without an evidentiary hearing the court does not need to accept inferences drawn by plaintiffs if such inferences are unsupported by the facts.  *See Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 459 (10th Cir. 1996); *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017).

Plaintiffs allege that the Court has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k)(1)(C) and 4(k)(2).[2]  In a civil action based on a federal question, the

---

[2] Plaintiffs also argue that the Court has specific personal jurisdiction over the PLO and PA and general personal jurisdiction over Defendant Mansour (D. 69 at 19-34).  These claims typically arise under the Fourteenth Amendment and the state's long-arm statute, however, these claims may be analyzed under the Fifth Amendment as the standard is the same in civil cases (this issue will be addressed infra).  Ultimately, this Court finds that the PSJVTA's consent provision does not comport with due process.  Thus, to the extent that Plaintiffs would attempt to assert personal jurisdiction under Colorado's long-arm statute, this argument would fail too.  The plaintiff must show (1) the laws of the forum state potentially confer jurisdiction by authorizing service upon the defendant, and (2) the exercise of such jurisdiction comports with the principles of due process.  *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (citation omitted).  Because Colorado's Long-Arm Statute "confers the maximum jurisdiction permissible, consistent with the Due Process clause," the statutory and constitutional analysis is the same.  *Id.*  Thus, the court merely needs to examine whether the exercise of personal jurisdiction comports with due process.  The due process analysis examines whether:  (1) the defendant has such minimum contacts with the forum state that he should reasonably anticipate being haled into court (either by showing general or specific personal jurisdiction) and (2) the exercise of personal jurisdiction in the circumstances presented offends traditional notions of fair play and substantial justice.  *Id.* (quotations and citations omitted).  This Court finds that Defendants do not have any minimum contacts with the state

3

court must determine "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). Under Rule 4(k)(1)(C), "[s]erving a summons or filing of a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute." *Archangel Diamond Corp. Liquidating Tr. v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1360 (D. Colo. 2014) (internal quotations and citation omitted). "While service of process and personal jurisdiction both must be satisfied before a suit can proceed, they are [nonetheless] distinct concepts that require separate inquiries." *Id.* "When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction . . . provided that due process is satisfied." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000).

Rule 4(k)(2) provides for federal long-arm jurisdiction if the plaintiff can show: (1) the defendant is not subject to the jurisdiction of any state's court of general jurisdiction, and (2) that the exercise of jurisdiction comports with due process, the United States Constitution, and laws. *Zvelo, Inc. v. Check Point Software Techs., Ltd.*, 418 F. Supp. 3d 664, 671 (D. Colo. 2019); *see also Pandaw Am., Inc. v. Pandaw Cruises India Pvt. Ltd.*, 842 F. Supp. 2d 1303, 1310 (D. Colo. 2012). "This Rule serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." *Archangel Diamond Corp. Liquidating Tr.*, 75 F. Supp. 3d

---

of Colorado and would not expect to be haled into court here, thus the exercise of personal jurisdiction over Defendants would not comport with the Due Process Clause of the Fourteenth Amendment.

at 1360 (internal quotations and citation omitted). In order to preclude the use of Rule 4(k)(2) under the first prong of the test, courts require the defendant

> to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there . . . If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other state where suit is possible, then the federal court is entitled to use Rule 4(k)(2). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.

*Pandaw Am., Inc.*, 842 F. Supp. 2d at 1311.

## III. ANALYSIS

In the instant motion to dismiss, Defendants argue that: (1) they have not consented to personal jurisdiction under the PSJVTA; (2) the PA and PLO are persons under the Due Process Clause of the Fifth Amendment, and (3) Federal Rule of Civil Procedure 23.2 does not convey personal jurisdiction over them (D. 58, D. 76). Plaintiffs contend that (1) Defendants have submitted to jurisdiction under the PSJVTA by making payments to terrorists or family members after the enactment of the PSJVTA; (2) the PLO and PA are not persons under the due process clause; (3) this Court has specific jurisdiction over the PLO and PA; and (4) this Court has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 23.2 (D. 69). The parties also submitted briefing on the U.S. Supreme Court's decision, *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028 (2023), which held that Pennsylvania's consent statute requiring an out-of-state corporation to consent to personal jurisdiction in order to register to do business within the state did not violate the Due Process Clause of the Fourteenth Amendment. There is no dispute Defendants PLO and PA waived service of process in this action (D. 15) and Defendant Mansour was served at his home address in Florida (D. 55). The question before the Court is whether the PSJVTA consent

provision for personal jurisdiction in federal courts comports with due process.  The Court finds

that it does not.

### A.  PSJVTA

The scope of personal jurisdiction "flows not from Art. III, but from the Due Process

Clause."  *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)

("The personal jurisdiction requirement recognizes and protects an individual liberty interest. It

represents a restriction on judicial power not as a matter of sovereignty, but as a matter of

individual liberty.").  The Court conveys its condolences to the victims and their families.  While

the events described in Plaintiffs' First Amended Complaint are undoubtedly tragic, the Court is

mandated to examine whether it can exercise jurisdiction and to ensure that it is within the limits

prescribed by the Due Process Clause.[3]

To understand this case, it is necessary to understand the catalyst for the PSJVTA.  In 2016,

the Second Circuit vacated a jury verdict against the PLO and PA due to a lack of jurisdiction.

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016).   The Second Circuit

determined that the PLO and PA were not recognized as sovereign states by the United States and

were not corporations; rather, the PA was designated a non-sovereign government and the PLO as

a foreign agent (both of which the Second Circuit defined as unincorporated associations).  *Id.* at

332.  Ultimately, the Second Circuit held that the defendants' activities in the United States (e.g.,

maintaining an office in Washington, D.C., promoting the Palestinian cause in speeches and media

---

[3] It is irrelevant for this Court to distinguish between the Fifth Amendment and Fourteenth Amendment in its analysis in this case because the minimum contacts and fairness analyses are the same under the Fifth Amendment and the Fourteenth Amendment in civil cases.  *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citing *Chew v. Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir. 1998)); *see also Archangel Diamond Corp. Liquidating Tr. v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1359 (D. Colo. 2014).

appearances, and retaining a lobbying firm) did not render the defendants essentially at home in the United States to such an extent that a federal court would have personal jurisdiction over civil claims regarding terrorist attacks in Israel. *Id.* at 333; *see also Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.") (internal quotations and citation omitted). The Second Circuit ultimately ruled that there was no general personal jurisdiction, specific personal jurisdiction, or waiver of personal jurisdiction because the attacks occurred outside of the United States, the attacks in Israel were not expressly aimed at the United States (although Americans did die or suffer injuries), and lobbying activities by the defendants to change American policy were insufficiently related conduct under the ATA. *Waldman*, 835 F.3d at 343–44.

In light of this case and other rulings[4] that victims of terrorist attacks in Israel or family members of said victims could not bring a civil action against the PLO or PA under the ATA in federal courts, Congress enacted the PSJVTA. 18 U.S.C. § 2333; *see also* Further Consolidated Appropriations Act of 2020, Pub. L. No. 116-94, 133 Stat. 2534; *Fuld v. Palestine Liberation Org.*, 578 F. Supp. 3d 577, 578 (S.D.N.Y. 2022). The PSJVTA provides that any national of the United States who is injured "in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs," may sue the PLO or PA "to recover threefold

---

[4] *See, e.g., Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016 (D.C. Cir. 2020); *Livnat v. Palestinian Auth.*, 851 F.3d 45, 54 (D.C. Cir. 2017).

the damages he or she sustains and the cost of the suit, including attorney's fees."  18 U.S.C. § 2333(a).

Specifically, the PSJVTA declares that the PLO and PA "shall be deemed to have consented to personal jurisdiction in such civil action if, regardless of the date of the occurrence of the act of international terrorism upon which such civil action was filed" if either (1) after 120 days post-enactment of the PSJVTA, the defendant makes a direct or indirect payment to a party who has committed an act of terrorism or to any family member of an individual who died committing an act of terrorism that killed or injured a United States national; or (2) after 15 days post-enactment of the PSJVTA, the defendant continues to maintain or establishes an office, headquarters, premises, or other facilities or establishments in the United States or "conducts any activity while physically present in the United States on behalf of the Palestine Liberation Organization or the Palestinian Authority."  18 U.S.C. § 2334(e)(1)(A)-(B).  The PSJVTA notes that "no court may consider," inter alia, that any premise or activity undertaken was exclusively for the purpose of conducting official business of the United Nations (UN) when determining consent to personal jurisdiction.  18 U.S.C. § 2334(e)(3).  Like the U.S. District Court for the Southern District of New York, this Court finds that Congress cannot simply legislate that "any conduct, without regard for its connections to the United States generally or to litigation in the United States specifically, signals a party's intent to submit to the jurisdiction of a United States court." *Fuld*, 578 F. Supp. 3d at 580.  Ultimately, the Court finds that it cannot exercise jurisdiction in this case because the consent provision of the PSJVTA does not comport with due process.

1. *Persons under the Due Process Clause*

First, Plaintiffs argue that the PLO and PA are not persons under the Due Process Clause and that the Due Process Clause only applies to natural persons and private corporations but not a political body or a sovereign (D. 69 at 6-7).  This argument is unavailing.  Plaintiffs clearly allege in the Amended Complaint that Defendants PLO and PA are each "a person as defined in 18 U.S.C. § 2331."  Per 18 U.S.C. § 2331(3), "the term 'person' means any individual or entity capable of holding a legal or beneficial interest in property."

The Tenth Circuit has clarified that courts may consider context when determining the meaning of a word in a statute.  Context means "the text of the Act of Congress surrounding the word at issue, or the text of other related congressional Acts."  *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1130 (10th Cir. 2013); *see also Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 199 (1993) ("The relevant portion of the Dictionary Act, 1 U.S.C. § 1, provides (as it did in 1959) that [i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the wor[d] 'person' . . . include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.") (internal quotations omitted).[5]

The PLO and the PA are not foreign sovereigns because they are not recognized by the United States as a sovereign state and such determination by the Executive is binding.  *Waldman*,

---

[5] The U.S. Court of Appeals for the District of Columbia Circuit seemed to suggest that the PLO and PA were foreign corporations that were not subject to personal jurisdiction under *Daimler AG v. Bauman*, 571 U.S. 117 (2014) (holding that Plaintiffs could not invoke retroactive consent to personal jurisdiction because Defendants had not yet made a payment to trigger the PSJVTA).  The U.S. Court of Appeals for the Second Circuit also invoked *Daimler* but held that the PA is a non-sovereign government and the PLO is a foreign agent, both of which are unincorporated associations.  *Waldman*, 835 F.3d at 332.  Either decision, in the eyes of this Court, renders the PLO and PA to be persons that are entitled to due process protection.

835 F.3d at 329 (citing *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 18 (2015)); *see also Knox v. Palestine Liberation Org.*, 306 F. Supp. 2d 424, 431 (S.D.N.Y. 2004) (detailing the history of the PLO and PA).  While Plaintiffs rely on the dicta in *Shatsky v. Palestine Liberation Org.*, No. 18-CV-12355 (MKV), 2022 WL 826409, at *5 (S.D.N.Y. Mar. 18, 2022), for the proposition that the PLO and PA are not persons for purposes of constitutional due process, this Court respectfully disagrees.  The definition of personhood within the PSJVTA includes the PLO and PA because they are entities capable of holding a legal or beneficial interest in property, and Plaintiffs relied upon such a definition when pleading that the PLO and PA were persons in the Amended Complaint.  Accordingly, this Court finds that the PLO and PA are persons under the PSJVTA and, therefore, entitled to due process protection.  *See Waldman*, 835 F.3d at 330 ("Indeed, this Court has already applied Fourteenth Amendment principles to Fifth Amendment civil terrorism cases."); *see also* U.S. Amicus Br., *Sokolow v. Palestine Liberation Organization*, 138 S.Ct. 1438 (2018), 2018 WL 1251857 at *8 ("This Court has not recognized any other class of entities - whether natural or artificial - as outside the category of 'persons' for purposes of due process. It has treated as 'persons' domestic and foreign entities of various types, such as corporations.").

### 2.   *Mallory and Consent to the PSJVTA*

The next issue before this Court is to determine whether the PSJVTA's consent provision comports with due process.   The United States intervened in this case to defend the constitutionality of the consent provision of the PSJVTA, arguing that the U.S. Supreme Court affirmed in *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028 (2023) that deemed consent was consistent with due process (D. 107).  The holding in *Mallory*, however, is not as broad-sweeping as Plaintiffs and the United States purport it to be.  The *Mallory* Court did not break new ground

in its holding but rather reaffirmed that *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Min. & Mill. Co.*, 243 U.S. 93 (1917) controlled the analysis.  Accordingly, the U.S. Supreme Court held that Pennsylvania's consent statute, which required out-of-state corporations to consent to personal jurisdiction in Pennsylvania courts as a condition of registering to do business within the state, did not violate the Fourteenth Amendment's Due Process Clause.  *Mallory*, 143 S. Ct. at 2037-38.

The PSJVTA is substantially different from the Pennsylvania statute.  *Compare* 18 U.S.C. § 2334 with 42 Pa. Stat. and Cons. Stat. § 5301(a)(2)(i), (b).  In both *Pennsylvania Fire* and *Mallory*, the out-of-state corporation had registered with the respective department of state in order to conduct business and maintained an office within that jurisdiction.  That is not the case here.  Rather, the trigger for establishing personal jurisdiction over the PLO and PA is if one of the entities (1) makes an international payment, directly or indirectly, to an individual convicted of terrorism that injured or killed a national of the United States or to *any family member* of the convicted person; (2) maintains a premise within the United States; or (3) conducts *any activity* while physically present in the United States on behalf of the PLO or PA, regardless of whether that activity is UN-related.  18 U.S.C. § 2334(e)(1)(A)-(B) (emphasis added).[6]  With the PSJVTA, "Congress simply took conduct in which the PLO and PA had previously engaged—conduct that the Second and D.C. Circuits had held was insufficient to support personal jurisdiction . . . and declared that such conduct 'shall be deemed' to be consent."  *Fuld*, 578 F. Supp. 3d at 587.  As the U.S. Supreme Court noted in 1945:

---

[6] Because the Court finds that the PSJVTA violates the Due Process Clause, it will refrain from delving into an analysis regarding whether it is also vague and ambiguous or facially unconstitutional.

> Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945).

As previously discussed, and as Plaintiffs have alleged, Defendants are persons and not out-of-state corporations that have registered to do business within Colorado. Defendants' work at the UN and in Washington, D.C., or payments made in Palestine also do not trigger jurisdiction in the U.S. District Court for the District of Colorado. *See Sokolow*, 607 F. Supp. 3d at 326 ("Even accepting Plaintiffs' argument that Defendants' United States activities fall within the ambit of the PSJVTA's U.S. activities prong . . . these types of conduct do not infer any intention on the part of Defendants to legally submit to suit in the United States."); *Fuld*, 578 F. Supp. at 587 ("Put simply, for waiver of personal jurisdiction through consent to satisfy the requirements of due process, it must be willful, thoughtful, and fair. Extorted actual consent and equally unwilling implied consent are not the stuff of due process." (internal quotations and citation omitted)). Plaintiffs' allegations neither support the conclusion that Defendants have consented to the jurisdiction of every federal court in the United States nor can be extrapolated to establish jurisdiction in the U.S. District Court for the District of Colorado. Ultimately, this Court finds that the holding in *Mallory* is not applicable to the PSJVTA, the consent provision of the PSJVTA does not comport with due process, and Defendants have not consented to jurisdiction in this Court.

3. *General and Specific Personal Jurisdiction*

Under the Due Process Clauses of the Fifth and Fourteenth Amendments, which are analyzed similarly in civil cases, the Court examines two parts to the due process test for personal jurisdiction as established by *International Shoe* and its progeny: (1) "the minimum contacts inquiry" (i.e., "whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant"); and (2) "the reasonableness inquiry" (i.e., "whether the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice under the circumstances of the particular case"). *Waldman*, 835 F.3d at 331 (internal quotations and citations omitted). A court can exercise personal jurisdiction in two ways: general jurisdiction and specific jurisdiction. *See Int'l Shoe Co.*, 326 U.S. at 316.

Plaintiffs do not allege that there is general personal jurisdiction over the PLO and PA but do allege that the Court has general personal jurisdiction over Riyad Mansour, who is the named representative for the PLO and PA, as he is a domiciliary of the United States and service was effected at Mansour's home address in Florida (D. 69 at 27). Plaintiffs fail to identify activities sufficient to establish general personal jurisdiction, which "requires that the defendant have continuous and systematic contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." *Medinfo, Inc. v. MedTool LLC*, No. 15-CV-00260-MEH, 2015 WL 3542712, at *2 (D. Colo. June 5, 2015) (internal quotations and citation omitted).

Plaintiffs also argue that the Court has specific personal jurisdiction over the PLO and PA (D. 69 at 19-27). "Specific jurisdiction, on the other hand, depends on an affiliatio[n] between the

13

forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotations omitted). "Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). "But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Here, the only tie this case has to the U.S. District Court for the District of Colorado is the fact that Plaintiff Shelley Levine is domiciled and resides in Boulder, Colorado (D. 50 at 5). The actions by Defendants (especially actions taken in Israel) are not sufficiently connected to the United States or even the state of Colorado. Thus, there is no basis to conclude that Defendants may haled into a federal court in the United States, let alone this Court. "The overwhelming evidence shows that the defendants are 'at home' in [the Palestinian Territories]."[7] *Waldman*, 835 F.3d at 332. Accordingly, the Court finds that Plaintiffs have failed to establish that this Court has either specific or general personal jurisdiction over any of the Defendants due to lack of activity in the forum.

---

[7] See *Palestinian Territories*, U.S. Dep't of State, https://www.state.gov/countries-areas/palestinian-territories/ (last visited Aug. 22, 2023).

### 4. Federal Rule of Civil Procedure 23.2

Finally, Plaintiffs argue that Rule 23.2 permits class actions against unincorporated associations.[8] Rule 23.2 states:

> This rule applies to an action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties. *The action may be maintained only if it appears that those parties will fairly and adequately protect the interests of the association and its members.* In conducting the action, the court may issue any appropriate orders corresponding with those in Rule 23(d), and the procedure for settlement, voluntary dismissal, or compromise must correspond with the procedure in Rule 23(e).

Fed. R. Civ. P. 23.2 (emphasis added).  This rule does not create personal jurisdiction over Defendants when there is a lack of consent, general personal jurisdiction, or specific personal jurisdiction.  Furthermore, Plaintiffs are not suing Defendants as a class action under Rule 23. Accordingly, this argument is unavailing, and the Court will not spend further time analyzing it.

### B.  Remaining Claims

The Court has disposed of all of Plaintiffs' federal law claims.  All the remaining claims are brought under Israeli law, which Plaintiffs argue implicates this Court's supplemental subject-matter jurisdiction under 28 U.S.C. § 1367.   Under 28 U.S.C. § 1367(c)(3), when all the federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining claims not brought under federal law.  *See Smith v. City of Enid*, 149 F.3d 1151,

---

[8] The Tenth Circuit has previously held that unincorporated associations may not be sued under certain federal laws. *See Colorado Montana Wyoming State Area Conf. of NAACP v. United States Election Integrity Plan*, No. 1:22-CV-00581-CNS, 2023 WL 1338676, at *6 (D. Colo. Jan. 31, 2023) (holding that an unincorporated association could not be sued under  42 U.S.C. § 1985(3)) (collecting cases); *see also Becker v. Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 868 F.3d 1199, 1206 n.5 (10th Cir. 2017); *Lippoldt v. Cole*, 468 F.3d 1204, 1211 (10th Cir. 2006) (holding that an unincorporated association was not a person under 42 U.S.C. § 1983).  However, because this Court has agreed with the Second Circuit that, the PA is a non-sovereign government and the PLO is a foreign agent, which makes them persons under the Due Process Clause, the Court does not need to reach the issue of whether Defendants are unincorporated associations and whether they can even be sued in the Tenth Circuit.  *See Waldman*, 835 F.3d at 332.

1156 (10th Cir. 1998).  Accordingly, the Court dismisses the remaining claims without prejudice for lack of subject-matter jurisdiction.

## IV.  CONCLUSION

Accordingly, Defendants' motion to dismiss is GRANTED (D. 58).  It is FURTHER ORDERED that the Clerk of the Court shall close this case.

DATED August 23, 2023.

BY THE COURT:

_____

Gordon P. Gallagher
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Gordon P. Gallagher

Civil Action No. **1:21-cv-03043-GPG-STV**

SHELLEY LEVINE, et al.,

      Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION;
THE PALESTINIAN AUTHORITY (a/k/a "The Palestinian Interim Self-Government
Authority" and/or "The Palestinian National Authority"); and
RIYAD MANSOUR, as the representative of The Palestine Liberation Organization
and The Palestinian Authority,

      Defendants.

---

## FINAL JUDGMENT

---

      In accordance with the orders filed during the pendency of this case, and pursuant to Fed.

R. Civ. P. 58(a), the following Final Judgment is hereby entered.

      Pursuant to the order entered by Judge Gordon P. Gallagher on August 23, 2023, [D. 111]

it is

      **ORDERED** that Defendants' Motion to Dismiss [D. 58] is **GRANTED**, It is

      **FURTHER ORDERED** that Plaintiffs' First Amended Complaint and all remaining

         claims are dismissed without prejudice, it is

      **FURTHER ORDERED:** that judgment is entered in favor of the Defendants, and

         against the Plaintiffs, it is

      **FURTHER ORDERED** that the Defendants are awarded their costs to be taxed by the

         Clerk of the Court in the time and manner prescribed in Fed. R. Civ. P. 54(d)(1)

         and D.C.COLO.LCivR 54.1

This case will be closed.

DATED at Grand Junction, Colorado this 23rd day of August 2023.

FOR THE COURT:

JEFFREY P. COLWELL, CLERK


By:      s/ D. Clement
         D. Clement
         Deputy Clerk