**[ORAL ARGUMENT REQUESTED]**

**Nos. 23-1286, 23-1335**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

———————————

CHAYA WERFEL, et al.,

Plaintiffs-Appellants,

v.

THE PALESTINE LIBERATION ORGANIZATION, et al.,

Defendants-Appellees.

———————————

UNITED STATES OF AMERICA,

Intervenor-Appellant.

———————————

On Appeal from the United States District Court
for the District of Colorado
District Court Case No. 21-cv-03043 (Judge Gallagher)

———————————

**REPLY BRIEF FOR INTERVENOR-APPELLANT
THE UNITED STATES OF AMERICA**

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

SHARON SWINGLE
COURTNEY L. DIXON
  *Attorneys, Appellate Staff
  Civil Division, Room 7246
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 353-8189*

## TABLE OF CONTENTS

**<u>Page</u>**

GLOSSARY

ARGUMENT ............................................................................................................1

THE PSJVTA'S JURIDICTIONAL PROVISIONS COMPORT
   WITH FIFTH AMENDMENT DUE PROCESS ........................................................1

CONCLUSION ......................................................................................................16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                             **Page(s)**

*Bristol-Meyers Squibb Co. v. Superior Court*,
582 U.S. 255 (2017) .......................................................................... 14

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ......................................................................... 2, 9

*College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*,
527 U.S. 666 (1999) ............................................................................ 7

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ............................................................................ 5

*Fuld v. PLO*:
82 F.4th 74 (2d Cir. 2023) ................................................................ 6
101 F.4th 190 (2d Cir. 2024) ........................................ 6, 8, 9, 11, 13

*Hess v. Pawloski*,
274 U.S. 352 (1927) ......................................................................... 11

*Insurance Corp. of Ir. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) ...................................................................... 2, 7, 15

*Mallory v. Norfolk S. Ry. Co.*,
600 U.S. 122 (2023) ........................................... 2, 4, 5, 7, 7-8, 8, 14

*Peay v. BellSouth Med. Assistance Plan*,
205 F.3d 1206 (10th Cir. 2000) .............................................. 12-13, 13

*Pennsylvania Fire Ins. Co. of Phila. v. Gold Issue Mining & Milling Co.*,
243 U.S. 93 (1917) ............................................................................. 3

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
119 F.3d 935 (11th Cir. 1997) ..........................................................13

*Waldman v. PLO*,
835 F.3d 317 (2d Cir. 2016) ............................................................ 15

*Wellness Int'l Network, Ltd. v. Sharif*,
575 U.S. 665 (2015) ........................................................................ 2, 3

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ........................................................................... 6

**Statutes:**

Anti-Terrorism Clarification Act of 2018,
    Pub. L. No. 115-253, § 4, 132 Stat. 3183, 3184-85 ......................................12

Taylor Force Act,
    Pub. L. No. 115-141, div. S, tit. X, § 1002(1), 132 Stat. 348, 1143 (2018)
    (codified at 22 U.S.C. § 2378c-1 note) ...............................................10

18 U.S.C. § 2333 ....................................................................... 10

18 U.S.C. § 2334(e) ..................................................................... 1

18 U.S.C. § 2334(e)(1)(A) ............................................................... 9

18 U.S.C. § 2334(e)(1)(A)-(B) ......................................................... 3, 5

18 U.S.C. § 2334(e)(1)(B) .............................................................. 11

18 U.S.C. § 2334(e)(1)(B)(i)-(ii) ..................................................... 12

18 U.S.C. § 2334(e)(3) .............................................................. 11, 12

22 U.S.C. § 2378b note ................................................................ 11

22 U.S.C. § 5202 .................................................................... 11, 12

42 Pa. Cons. Stat. § 5301(a) ........................................................... 5

42 Pa. Cons. Stat. § 5301(a)(2)(i) ..................................................... 4

# GLOSSARY

| | |
|---|---|
| ATA | Anti-Terrorism Act of 1992 |
| ATCA | Anti-Terrorism Clarification Act of 2018 |
| PA | Palestinian Authority |
| PLO | Palestine Liberation Organization |
| PSJVTA | Promoting Security and Justice for Victims of Terrorism Act of 2019 |

## ARGUMENT

## THE PSJVTA'S JURIDICTIONAL PROVISIONS COMPORT WITH FIFTH AMENDMENT DUE PROCESS

In the Promoting Security and Justice for Victims of Terrorism Act of 2019 (PSJVTA), Congress set out expressly what actions of the Palestinian Authority (PA) and the Palestine Liberation Organization (PLO), if taken after a specified date, will be deemed consent by those entities to personal jurisdiction in U.S. courts for a limited class of claims: civil claims under the Anti-Terrorism Act of 1992 (ATA). *See* 18 U.S.C. § 2334(e). As the government's opening brief established, the PSJVTA is consistent with Fifth Amendment requirements of due process. The statute provides defendants with clear notice of the conduct that will subject them to jurisdiction for a particular type of claim, and a reasonable period of time in which to choose whether or not to continue that conduct knowing the jurisdictional consequences. Furthermore, the actions of the PA and PLO that Congress chose to deem as consent—performing certain activities while physically present in the United States or making certain payments that Congress considers incentivize terrorist attacks harming United States nationals—have a fair and reasonable connection to the ATA cause of action and the United States as a forum. Congress has particular authority to enact such a statute with respect to the PA and PLO: *sui generis* foreign entities that exercise governmental authority but have not been recognized as the government of a sovereign state by the Executive. The district court erred in concluding that the

PSJVTA is inconsistent with due process, and defendants' arguments fail to demonstrate otherwise.[1]

**A. 1.** Defendants acknowledge that "the requirement of personal jurisdiction" can be "waived" by a defendant, and that the Supreme Court has recognized a "variety of legal arrangements" through which a defendant may consent to personal jurisdiction. *See* Resp. Br. 20 (quoting *Insurance Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)); *see also Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023) (plurality opinion) (recognizing that "express or implied consent" may "ground personal jurisdiction—and consent may be manifested in various ways by word or deed" (quotation marks omitted)). Where a defendant's consent is "knowing and voluntary," *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 685 (2015), and the circumstances are not "unreasonable and unjust," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (quotation marks omitted), a court's exercise of jurisdiction comports with due process.

The PSJVTA satisfies these requirements. As the government's opening brief explained, the PSJVTA sets out expressly what conduct by the PA and PLO, if performed after a particular date, will be considered consent by those entities to

---

[1] The United States intervened in this litigation to defend the constitutionality of the PSJVTA. The United States has assumed for purposes of defending the PSJVTA's constitutionality that the PA and PLO have due process rights, *see* Gov't Br. 13, and the United States takes no position on plaintiffs' other jurisdictional arguments.

personal jurisdiction in U.S. courts for civil ATA claims. *See* 18 U.S.C. § 2334(e). The PSJVTA provides that the PA and PLO will be deemed to have consented to such claims if: (1) more than 120 days after the PSJVTA's enactment, the PA and PLO make certain payments to designees or family members of individuals imprisoned for or killed while committing acts of terrorism that killed or injured U.S. nationals; or, (2) more than 15 days after the PSJVTA's enactment, the PA and PLO maintain an office in the United States or "conduct[] any activity while physically present in the United States on behalf of" the PLO or PA, apart from certain limited exceptions such as activity related to United Nations business or involving U.S. government officials. *See id.* § 2334(e)(1)(A)-(B), (e)(3).

Defendants do not meaningfully dispute that, since the PSJVTA's enactment, they have "know[n]" what actions will be deemed consent to personal jurisdiction in U.S. courts for civil ATA claims, and they have had the opportunity to "voluntarily" choose whether or not to continue such actions knowing the jurisdictional consequences. *See Wellness Int'l Network*, 575 U.S. at 685 (quotation marks omitted). Defendants' choice to perform the specified actions after the dates provided in the PSJVTA is the "voluntary act" that manifests consent to jurisdiction. *See Pennsylvania Fire Ins. Co. of Phila. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 95-96 (1917) (finding defendant's appointment of agent for service of process constitutionally subjected defendant to suit where the governing statute "ha[d] been held to go to that length" and the execution of the document "was the defendant's voluntary act").

3

Defendants nonetheless seek to dismiss the PSJVTA as a legal "fiction." *E.g.*, Resp. Br. 1. The Supreme Court rejected similar arguments in *Mallory v. Norfolk S. Ry. Co.*, in upholding Pennsylvania's business-registration statute. *See* 600 U.S. at 134-35. The Pennsylvania statute at issue in *Mallory* provided that an out-of-state company's registration "as a foreign corporation" in the State "shall constitute a sufficient basis" for Pennsylvania state courts "to exercise general personal jurisdiction" over the out-of-state corporation with respect to any claim. 42 Pa. Cons. Stat. § 5301(a)(2)(i); *see Mallory*, 600 U.S. at 134. When a registered out-of-state corporation was sued in Pennsylvania state court for conduct that had occurred outside of the State, the corporation attempted to argue that it had "not *really*" consented to suit there. *See Mallory*, 600 U.S. at 144 (plurality opinion). The Supreme Court rejected that argument, explaining that Pennsylvania's statute was "explicit," and that the defendant had "understood" that it would be "amenable to suit on any claim" as a result of its registration. *See id.* at 134-35 (majority opinion). The Court therefore held that it was "hardly unfair" for Pennsylvania's courts to exercise jurisdiction over the out-of-state defendant that had registered pursuant to the statute's terms. *See id.* at 146 n.11 (plurality opinion) (noting grounds on which a "majority of the Court . . . agrees.").

*Mallory* likewise refutes defendants' assertion that the PSJVTA is inconsistent with due process because the conduct Congress chose to "deem" as consent is conduct that courts have held insufficient to establish general or specific jurisdiction over the PA and PLO. *See* Resp. Br. 17-19, 30 (quotation marks omitted). The

Supreme Court made clear in *Mallory* that consent—whether express or implied—is a separate and independent basis for jurisdiction that can apply where the requirements for general or specific jurisdiction have not been met. *See* 600 U.S. at 138 (discussing cases) (plurality opinion); *see also id.* at 149 (Jackson, J., concurring) ("Whether Pennsylvania could have asserted general jurisdiction over [the defendant] *absent* any waiver is beside the point (citation omitted)); *id.* at 153 (Alito, J., concurring in part and concurring in the judgment) ("Consent is a separate basis for personal jurisdiction."). Thus, the Court in *Mallory* upheld Pennsylvania's law providing that registration in the State "shall permit state courts 'to exercise general personal jurisdiction'" over an out-of-state company that had registered pursuant to the statute's terms, *see id.* at 134 (majority opinion) (quoting 42 Pa. Cons. Stat. § 5301(a)), even though such registration would presumably have been insufficient to establish general personal jurisdiction over the out-of-state defendant under a minimum-contacts analysis, *see Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Nor is it material that the conduct that Congress identified in the PSJVTA is conduct that the PA and PLO "had previously engaged" in prior to the statute's enactment. *See* Resp. Br. 30 (quotation marks omitted). Congress can undoubtedly attach new jurisdictional consequences to conduct going forward, and under the PSJVTA, the identified conduct will be deemed consent to personal jurisdiction only if the PA and PLO undertake such actions *after* specified periods of time following the statute's enactment. *See* 18 U.S.C. § 2334(e)(1)(A)-(B). Thus, as explained, the

PSJVTA provides defendants fair warning and the opportunity to "structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," consistent with due process. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

    **2.** Defendants also seek to limit the circumstances under which a defendant can impliedly consent to jurisdiction pursuant to a statute to circumstances in which the defendant has received a reciprocal benefit in return. *See* Resp. Br. 29, 37-38. The Second Circuit relied on similar reasoning in *Fuld v. PLO*, 82 F.4th 74, 88 (2d Cir. 2023), and the government's opening brief explained why that reasoning is incorrect. *See* Gov't Br. 24-25. As discussed further below, the United States *has* conferred a benefit on the PA and PLO to the extent those entities are performing activities in the United States that would satisfy the PSJVTA's activities prong. *See infra* pp. 10-11. But in all events, "[t]here is no requirement that" a defendant must receive a "reciprocal bargain[]." *See Fuld v. PLO*, 101 F.4th 190, 209 (2d Cir. 2024) (Menashi, J., dissenting from the denial of rehearing en banc). As the dissent from the denial of rehearing en banc in *Fuld* recently explained, "[d]efendants do not cite, and the Court has not found, any case holding that . . . receipt of a benefit is a necessary condition" for consent to personal jurisdiction to be valid, and there is no basis to conclude that a court's exercise of personal jurisdiction can be fair and reasonable only in the limited circumstances that defendants posit. *See id.* at 212 (quotation marks omitted).

Defendants rely heavily on *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666 (1999). *See, e.g.*, Resp. Br. 21, 24-25, 42. But that case did not concern personal jurisdiction—it involved a State's waiver of Eleventh Amendment sovereign immunity, which is subject to a particularly "stringent" waiver standard. *College Sav. Bank*, 527 U.S. at 675 (quotation marks omitted). Recognizing the States' position as sovereigns in our constitutional structure, the Supreme Court has required any waiver of Eleventh Amendment immunity to be "express" and "unequivocal." *Id.* at 676, 680. By contrast, the Supreme Court has made clear that a defendant's consent to personal jurisdiction can be "implied," *Bauxites*, 456 U.S. at 703, and that "a variety of actions of the defendant . . . can amount to a legal submission to the jurisdiction of a court"—even ones "that may seem like technicalities," *Mallory*, 600 U.S. at 146 (plurality opinion).

The defendant in *Mallory* likewise attempted to invoke *College Savings Bank* in arguing that it had not impliedly consented to jurisdiction, *see* Respondent's Brief at 12, *Mallory*, 600 U.S. 122 (No. 21-1168), 2022 WL 3925010, at *12, but the Supreme Court did not cite that decision in upholding Pennsylvania's law, let alone find that it provided the relevant standard, *see generally Mallory*, 600 U.S. 122. Nor did the Court limit its reasoning to a reciprocal exchange of benefits between the defendant and the forum, as defendants suggest. *E.g.*, Resp. Br. 47-48. Rather, as explained, the Court emphasized the express terms of the statute and that the defendant had "understood" the jurisdictional consequences of its registration and proceeded, nonetheless. *See*

*Mallory*, 600 U.S. at 135-36, 136 n.5; *id.* at 152 (Alito, J., concurring in part and concurring in the judgment) (emphasizing the defendant had taken "steps that, under the express terms" of the statute, "were understood as consent to the State's jurisdiction in suits on all claims"); *id.* at 148-49 (Jackson, J., concurring) (explaining that when the defendant registered, "the jurisdictional consequences of registration were clear"); *see also Fuld*, 101 F.4th at 212 (Menashi, J., dissenting from the denial of rehearing en banc) (recognizing that the defendant in *Mallory* "consented to general personal jurisdiction by taking a voluntary action in connection with the forum with knowledge that state law deemed the action to be consent").

As the government's opening brief demonstrated, the PSJVTA is similarly "explicit" as to what conduct will be deemed consent to jurisdiction if taken after a specified date, and indeed is much narrower than the registration statute upheld in *Mallory*, 600 U.S. at 134.  While Pennsylvania's law applied to any out-of-state business registering in the State and made such businesses amenable to suit in Pennsylvania state court "on *any* claim," *see id.* at 135 (emphasis added), the PSJVTA is limited to a particular type of claim—civil claims under the ATA—that has a fair and reasonable connection to the activity Congress determined would be consent to jurisdiction, and the statute applies only to the PA and PLO: *sui generis* foreign entities that exercise governmental authority but have not been recognized as the government of a sovereign state by the Executive.  *See* Gov't Br. 16-19; *infra* pp. 9-11.  Moreover, while Pennsylvania's law was upheld under the due-process requirements of the Fourteenth

8

Amendment, the PSJVTA must be assessed under the due-process requirements of the Fifth Amendment and in light of the political branches' special competence in matters of foreign affairs.  *See* Gov't Br. 19-21; *infra* pp. 12-14.

**B.**  Defendants' arguments likewise fail to rebut the government's showing that the conduct Congress chose to deem as consent in the PSJVTA has a fair and reasonable connection to the subject-matter of the litigation and the United States as a forum, *see* Gov't Br. 16-19, and thus a federal court's exercise of jurisdiction pursuant to its provisions would be neither "unreasonable [nor] unjust," *see Burger King*, 471 U.S. at 472 n.14 (quotation marks omitted); *see also Fuld*, 101 F.4th at 212-13 (Menashi, J., dissenting from the denial of rehearing en banc) (recognizing that the conduct identified in the PSJVTA's prongs has a "nexus" to the forum and thus a court's exercise of jurisdiction would not be "unfair" (quotation marks omitted)).

Defendants describe the payments identified in the PSJVTA's payments prong as "completely unconnected" to the ATA and the United States, Resp. Br. 31, but that ignores the PSJVTA's express terms.  Under the PSJVTA, the only payments that will be deemed consent to jurisdiction are those made to designees or family members of persons who committed acts of terrorism "that injured or killed a national of the United States," "if such payment is made by reason of" such individual's death or imprisonment for that act.  *See* 18 U.S.C. § 2334(e)(1)(A).  The conduct identified in the PSJVTA's payments prong is therefore closely linked to the United States and the actions in U.S. courts that will be allowed to proceed under its provisions: civil claims

under the ATA, brought to redress injuries to U.S. nationals caused by terrorism. *See id.* § 2333. As the government's opening brief explained (p. 18), Congress has considered in other legislation that such payments by the PA and PLO incentivize the very type of terrorism that Congress sought to combat in creating the ATA cause of action. *See* Taylor Force Act, Pub. L. No. 115-141, div. S, tit. X, § 1002(1), 132 Stat. 348, 1143 (2018) (codified at 22 U.S.C. § 2378c-1 note).

Defendants' arguments with respect to the PSJVTA's activities prong are similarly unpersuasive. Defendants do not meaningfully dispute the government's showing that the conduct identified in that prong has a fair and reasonable connection to the ATA cause of action and the United States as a forum. *See* Gov't Br. 17-18. Defendants instead rest their objection to the PSJVTA's activities prong on the assertion that defendants must be provided a "government benefit" in order for their consent to be valid, and that they have not been provided any such benefit. *See* Resp. Br. 33-35. That argument fails at every step. As explained above, a reciprocal exchange of benefits is not required, and in any event, to the extent the PA and PLO are performing activities in the United States that would satisfy the PSJVTA's activities prong, the United States has conferred a benefit. *See* Gov't Br. 25-26.

Defendants acknowledge that Congress and the Executive Branch have generally prohibited the PA and PLO from engaging in a range of activities in the United States. *See* Resp. Br. 4, 35-37 (recognizing that, apart from certain United Nations related activities, the PA and PLO are generally "blocked . . . from

10

conducting any activities in the United States"); *see also* 22 U.S.C. § 5202 (prohibiting PLO from maintaining an office in the United States or from expending funds for the purpose of the interests of the PLO); *id.* § 2378b note (prohibition of PA facilities in the United States under certain circumstances). The PA's and PLO's ability to do so is dependent on the coordinate judgments of the political branches, which have long imposed restrictions on those entities' operations and activities in the United States based on terrorism-related concerns. *See* Gov't Br. 3-5 (discussing constitutional and statutory conditions under which the Executive Branch may waive or decline to enforce prohibitions to permit the PA and PLO to operate in the United States).

Thus, to the extent the PA or PLO are "maintain[ing] any office" in the United States or conducting certain activities "while physically present in the United States" that would satisfy the PSJVTA's activities prong, 18 U.S.C. § 2334(e)(1)(B), (e)(3), they are receiving the benefit of being permitted to do so by the United States, which could otherwise limit or restrict that U.S. activity altogether. The PSJVTA's activities prong thus serves the same purpose as the statutes upon which defendants rely. *See* Resp. Br. 26-27 (recognizing, for example, that where a sovereign has "the antecedent authority . . . to 'exclude'" a non-resident from engaging in certain conduct in the forum, it may condition the privilege to engage in such conduct on consent to jurisdiction, and a defendant's performance of such conduct in the forum "signifi[es]" the defendants' consent (quoting *Hess v. Pawloski*, 274 U.S. 352, 354-57 (1927)); *see also Fuld*, 101 F.4th at 213 (Menashi, J., dissenting from the denial of rehearing en banc)

11

(recognizing that the PSJVTA's U.S. activities prong "parallels the statute upheld in *Mallory*").[2]

Defendants miss the relevant point in asserting that they "do not currently operate or maintain any physical presence in the United States." Resp. Br. 36-37. Such arguments may be relevant to whether the factual predicate for the PSJVTA's activities prong has been satisfied—an issue the district court did not address, and on which the United States has taken no position in this case, *see* App. Vol. 4 at 876 n.1— but such arguments do not establish that a court's exercise of jurisdiction under the PSJVTA's activities prong would be unconstitutional if its factual predicate is met.

**C.** Defendants also offer no persuasive response to the government's showing that the foreign-affairs context in which the PSJVTA was enacted meaningfully informs the due-process analysis under the Fifth Amendment. *See* Gov't Br. 20-21. Defendants emphasize that the text of the "Due Process Clauses of the Fourteenth and Fifth Amendments are virtually identical," and that they both "protect individual libert[y]" interests. Resp. Br. 46 (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d

---

[2] The PSJVTA also operates substantially the same as its statutory predecessor, the Anti-Terrorism Clarification Act of 2018 (ATCA). *Compare* ATCA, Pub. L. No. 115-253, § 4, 132 Stat. 3183, 3184-85, *with* 18 U.S.C. § 2334(e)(1)(B)(i)-(ii), (e)(3). Contrary to defendants' assertions, the ATCA did not itself purport to "authorize" defendants to maintain an office in the United States. *See* Resp. Br. 38-39. Rather, it provided that if a defendant maintained an office in the United States pursuant to a waiver or suspension of the restrictions under 22 U.S.C. § 5202, that conduct would be deemed consent by those entities to personal jurisdiction in U.S. courts for civil ATA claims. *See* ATCA, Pub. L. No. 115-253, § 4, 132 Stat. at 3184-85.

1206, 1212 (10th Cir. 2000)).  As the government's opening brief acknowledged (p. 21), for these reasons, this Court has recognized that "the Fourteenth Amendment's fairness and reasonableness requirements" are not to "be discarded completely when jurisdiction is asserted under a federal statute." *See Peay*, 205 F.3d at 1212 (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 945 (11th Cir. 1997)).  That does not mean, however, that the Fourteenth Amendment's standards must be applied "mechanically" in the Fifth Amendment context.  *See Republic of Panama*, 119 F.3d at 945-46.  To the contrary, the United States' position as a sovereign in the international community and its special competence in matters of foreign affairs are, at a minimum, relevant to determining whether a federal court's exercise of jurisdiction pursuant to congressional authorization is "fair and reasonable" to a foreign defendant.  *See Peay*, 205 F.2d at 1212; *see also Fuld*, 101 F.4[th] at 220-23 (Menashi, J., dissenting from the denial of rehearing en banc) (agreeing that Fifth Amendment context should meaningfully inform the due-process analysis).  That is particularly so with respect to *sui generis* foreign entities such as the PA and PLO that exercise governmental authority but have not been recognized by the Executive as the government of a sovereign state.

Contrary to defendants' arguments, therefore, this Court has no need to decide the circumstances under which a State may be able to enact a particular consent statute consistent with the Fourteenth Amendment and structural limitations on State authority.  *See* Resp. Br. 43-44.  In the PSJVTA, Congress legislated on a matter of

foreign policy to ensure that the ATA's civil-damages remedy can function effectively to halt and deter international terrorism, and it did so by placing these unique foreign non-sovereign defendants on reasonable notice that engaging in certain related activities will subject those entities to the adjudicative authority of federal courts for purposes of a limited class of terrorism-related claims. That tailored approach is consistent with due process for the reasons already explained, particularly under the Fifth Amendment, which, properly understood, permits federal courts to exercise jurisdiction over foreign defendants in ways that have no analogue for a state court exercising jurisdiction under the Fourteenth Amendment. *See Bristol-Meyers Squibb Co. v. Superior Court*, 582 U.S. 255, 263 (2017) (noting federalism concerns that, "at times," may "be decisive" to the Fourteenth Amendment analysis); *Mallory*, 600 U.S. at 157 (Alito, J., concurring in part and concurring in the judgment) (emphasizing other structural constitutional limitations on States' power to assert jurisdiction over non-resident defendants).

**D.** Finally, there is no merit to defendants' cursory argument that the PSJVTA violates the "separation of powers." Resp. Br. 63-64. Defendants' assertion that the PSJVTA "usurps the judicial function" by requiring courts to find personal jurisdiction even if due-process standards are not satisfied, *see* Resp. Br. 64, merely repackages defendants' due-process arguments, and fails for the same reasons. Defendants similarly err in contending that the PSJVTA impermissibly "supersede[s]" judicial decisions. Resp. Br. 64 (quotation marks omitted). Defendants rely on cases

14

in which courts declined to exercise general or specific jurisdiction over the PA and PLO on the facts presented in those cases, *see, e.g.*, *Waldman v. PLO*, 835 F.3d 317, 337 (2d Cir. 2016), but the PSJVTA does not disturb those holdings for the reasons already explained: consent is a separate and independent basis for jurisdiction that can apply even if the requirements for general or specific jurisdiction have not been met, *see infra* p. 4-5, and the PSJVTA sets out a reasonable "legal arrangement[]" through which the PA and PLO may consent, knowingly and voluntarily, to personal jurisdiction in U.S. courts for a limited class of terrorism-related claims, *see Bauxites*, 456 U.S. at 703.

## CONCLUSION

For the foregoing reasons, and those explained in the government's opening brief, the judgment of the district court should be reversed.

Respectfully submitted,

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney*
   *General*

SHARON SWINGLE
 *s/ Courtney L. Dixon*
COURTNEY L. DIXON
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7246*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 353-8189*
   *courtney.l.dixon@usdoj.gov*

June 2024

16

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 3,903 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Courtney L. Dixon*
Courtney L. Dixon

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system.

*/s/ Courtney L. Dixon*
Courtney L. Dixon