Nos. 23-1286, 23-1335

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

CHAYA WERFEL, et al.,
Plaintiffs/Appellants
v.
THE PALESTINE LIBERATION ORGANIZATION, et al.,
Defendants/Appellees
---------------------
UNITED STATES OF AMERICA,
Intervenor.

---

CHAYA WERFEL, et al.,
Plaintiffs,
v.
THE PALESTINE LIBERATION ORGANIZATION, et al.,
Defendants/Appellees
---------------------
UNITED STATES OF AMERICA,
Intervenor/Appellant.

---

On Appeal from the United States District Court
for the District of Colorado
The Honorable Gordon P. Gallagher
D.C No. 21-cv-03043-GPG-STV

---

### APPELLANTS CHAYA WERFEL, ET AL. REPLY BRIEF

---

Daniel K. Calisher
Michael A. Rollin
Chip G. Schoneberger
FOSTER GRAHAM MILSTEIN
& CALISHER LLP
360 S. Garfield Street, 6th Floor
Denver, CO 80209
Telephone: (303) 333-9810
Emails: calisher@fostergraham.com
mrollin@fostergraham.com
cschoneberger@fostergraham.com

Asher Perlin
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
Telephone: (786) 687-0404
Email: asher@asherperlin.com

*ORAL ARGUMENT REQUESTED*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................iii

ARGUMENT ........................................................................................ 1

   I.  The Court Has Personal Jurisdiction Over Defendants............................... 1

   A. Neither Defendant is a "Person" Under the Due Process Clause............ 1

   B. Defendants Consented to Jurisdiction Under the PSJVTA ..................... 3

      1.  Defendants Have Triggered All PSJVTA Predicates ........................ 4

         a.  Pay-for-Slay ........................................................................ 4

         b.  Activities in the United States.................................................. 6

      2.  A Defendant Need Not Desire to Submit to Jurisdiction.................. 8

      3.  Consent to Jurisdiction Does Not Require a Benefit ....................... 10

      4.  Defendants' U.S. Activities are Perfectly Legal .............................. 11

      5.  The Legality of Defendants' U.S. Activities is Irrelevant ............... 12

      6.  An Enhanced Nexus Exists in this Case ......................................... 15

   C. The Defendants are Subject to Specific Personal Jurisdiction.............. 16

   D. Jurisdiction Lies Under Rule 23.2 ....................................................... 19

      1.  Rule 23.2 Applies to This Action.................................................... 24

         a.  Rule 23.2 applies irrespective of state law ............................. 24

         b.  Rule 23.2 allows actions against unincorporated associations as an entity .......................................................................... 26

c.  Mansour is a proper representative of Defendants ................ 26

II.  Defendants Concede the Nonfederal Claims Should be Reinstated .......... 28

CONCLUSION ................................................................................... 28

ORAL ARGUMENT STATEMENT ..................................................... 30

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT .............. 31

CERTIFICATE OF SERVICE .............................................................. 32

4895-9101-8949, v. 1

# TABLE OF AUTHORITIES

**Cases**                                                                       **Pages**

*Battle Fowler v. Brignoli*,
765 F. Supp. 1202, (S.D.N.Y. 1991) ...................................................... 19, 22, 23

*Calagaz v. Calhoon*,
309 F.2d 248 (5th Cir. 1962) .................................................................. 19, 21, 22

*Curley v. Brignoli Curley & Roberts Assocs.*,
746 F. Supp. 1208 (S.D.N.Y. 1989) .............................................................. 22, 23

*Curley v. Brignoli, Curley & Roberts Assoc.*,
915 F.2d 81 (2d Cir. 1990) ........................................... 22, 23, 24, 25, 27

*Duerre v. Hepler*,
2017 S.D. 8, 892 N.W.2d 209 (S.D. 2017) ...........................................................20

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ...............................................................................................17

*Fuld v. Palestine Liberation Org.*,
578 F. Supp. 3d 577 (S.D.N.Y. 2022) ...................................................................10

*Fuld v. Palestine Liberation Org.*,
101 F.4th 190 (2d Cir. 2024) ...................................... 3, 9, 10, 11, 15, 16

*Goldberg v. UBS AG*,
660 F. Supp. 2d 410 (E.D.N.Y. 2009) ...................................................................16

*Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*,
974 F.3d 767 (6th Cir. 2020) .................................................................................14

*Hood v. Am. Auto Care, LLC*,
21 F.4th 1216 (10th Cir. 2021) ..............................................................................20

*In re Integra Realty Res., Inc.*,
354 F.3d 1246 (10th Cir. 2004) .............................................................................19

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) .................................................................................................8

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*,
  326 U.S. 310 (1945) ....................................................................................... 13, 14

*Kerney v. Fort Griffin Fandangle Ass'n, Inc.*,
  624 F.2d 717 (5th Cir. 1980) ...................................................................................24

*Klieman v. PA*,
  923 F.3d 1115 (D.C. Cir. 2019).......................................................................1, 17

*Livnat v. PA*,
  851 F.3d 45 (D.C. Cir. 2017)..........................................................................1, 17

*Lyngaas v. Curaden AG*,
  992 F.3d 412 (6th Cir. 2021) ....................................................................................20

*Mallory v. Norfolk S. Ry. Co.*,
  600 U.S. 122 (2023) ................................................................................................12

*Mathews v. Diaz*,
  426 U.S. 67 (1976) ..................................................................................................14

*Molock v. Whole Foods Mkt. Grp., Inc.*,
  952 F.3d 293 (D.C. Cir. 2020).................................................................................20

*Murphy v. Aaron's, Inc.*,
  No. 19-CV-00601-CMA-KLM, 2020 WL 2079188 (D. Colo. Apr. 30, 2020)...20

*Murray v. Sevier*,
  156 F.R.D. 235 (D. Kan. 1994) ............................................................ 24, 26, 27

*Mussat v. IQVIA, Inc.*,
  953 F.3d 441 (7th Cir. 2020) ...................................................................... 20, 21

*Nat'l Fair Hous. All. v. A.G. Spanos Const., Inc.*,
  542 F. Supp. 2d 1054 (N.D. Cal. 2008).................................................................19

*Northbrook Excess & Surplus Ins. Co. v. Med. Mal. Joint Underwriting Ass'n of
  Mass.*,
  900 F.2d 476 (1st Cir. 1990) ...................................................................... 24, 26

*Pa. Fire Ins. Co. of Philadelphia v. Gold Issue Min. & Mill. Co.*,
  243 U.S. 93 (1917) ..................................................................................................10

iv

*Plyler v. Doe,*
    457 U.S. 202 (1982) ...........................................................................14

*Resolution Tr. Corp. v. Deloitte & Touche,*
    822 F. Supp. 1512 (D. Colo. 1993) ....................................... 19, 22, 27

*Reyes v. Snowcap Creamery, Inc.,*
    898 F. Supp. 2d 1233 (D. Colo. 2012) ...............................................14

*Sembach v. McMahon College, Inc.,*
    86 F.R.D. 188 (S.D. Tex. 1980) ..........................................................25

*Shatsky v. PLO,*
    18-cv-12355 (MKV), 2022 WL 826409 (S.D.N.Y. Mar. 18, 2022).....................1

*Shatsky v. PLO,*
    955 F.3d 1016 (D.C. Cir. 2020)...........................................................17

*Waldman v. PLO,*
    835 F.3d 317 (2d Cir. 2016) ............................................................1, 17

*Wenz v. Memery Crystal,*
    55 F.3d 1503 (10th Cir. 1995) ..............................................................7

## **Statutes**

18 U.S.C. § 2331 ...................................................................................18

18 U.S.C. § 2334 ...................................................................................20

22 U.S.C. § 2378b............................................................................ 11, 12

22 U.S.C. § 2378c-1 ...............................................................................5

22 U.S.C. § 5202 .............................................................................. 11, 12

28 U.S.C. § 1367....................................................................................28

Pub. L. No. 115-141, § 1002(1) (Findings) .............................................5

**Rules**

Rule 12 Fed. R. Civ. P. ........................................................................8, 9

Rule 17 Fed. R. Civ. P. ...........................................................................25

Rule 23.2 Fed. R. Civ. P. ................................................................. passim

**Other Authorities**

2 Newberg on Class Actions § 4:34 (4th ed.) ...........................................19

Benjamin Kaplan, *Continuing Work of the Civil Committee,*,
  81 Harv. L. Rev. 356 ...........................................................................25

Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1861 (3d ed.) ................................27

James Wm. Moore *et al.*, Moore's Fed. Prac. § 23.2.05[4] (3d ed. 2020)..............27

# **GLOSSARY**

| ATA | Antiterrorism Act, 18 U.S.C. § 2331 *et seq.* |
|---|---|
| DOJ | United States Department of Justice |
| PFLP | Popular Front for the Liberation of Palestine |
| PSJVTA | Promoting Security and Justice for Victims of Terrorism Act, 18 U.S.C. § 2334(e) |
| TRNC | Turkish Republic of Northern Cyprus |
| UN | United Nations |

# **ARGUMENT**

For the reasons below and in Plaintiffs' Opening Brief, the district court's decision should be vacated and the case remanded for further proceedings.

## I.    **The Court Has Personal Jurisdiction Over Defendants**

### A.    **Neither Defendant Is a "Person" Under the Due Process Clause**

As Plaintiffs previously demonstrated, courts consistently hold that governmental entities – foreign and domestic, sovereign or not – are not "persons" within the meaning of the Due Process Clause. (Pls' Opening Br., pp. 10-21). Defendants have little to say in response, and Plaintiffs' Opening Brief anticipated and refuted most of Defendants' arguments.

Defendants first assert "[n]o court has ever accepted th[e] argument" that they are not "persons" under the Due Process Clause. (Appellees' Br., p. 49). Not true. The *Shatsky* court expressly found "[t]he PLO and PA are not persons for purposes of constitutional due process." *Shatsky v. PLO*, 18-cv-12355 (MKV), 2022 WL 826409 at *5-6 (S.D.N.Y. Mar. 18, 2022) (cleaned up). That court was ultimately unable to rule in the Plaintiffs' favor, only because of contrary circuit precedent.

Next, Defendants cite decisions (*Waldman v. PLO*, 835 F.3d 317 (2d Cir. 2016), *Livnat v. PA*, 851 F.3d 45 (D.C. Cir. 2017)) holding they are "persons" under the Due Process Clause, <u>because</u> they are not sovereign. Plaintiffs addressed *Waldman* and *Livnat* in detail and showed that their novel "sovereignty versus

personhood" dichotomy is unfounded. (Pls' Opening Br., pp. 17-19).

Defendants then argue that only <u>sovereign</u> governments are excluded from the category of "person" under the Due Process Clause, because only sovereign governments directly interact with the United States in the field of international relations. But this claim ignores that these Defendants can and do interact with the United States <u>directly on a government-to-government level</u>, on a daily basis. In fact, Defendants boast about their direct, government-to-government relationship with the U.S. government. (Appellees' Br., p. 4). Given this direct, international and political relationship, Defendants are not entitled to any greater due process protections than a sovereign government – that is, none at all.

Defendants also argue the cases finding the Virgin Islands and Puerto Rico are not "persons" for due process purposes did so because those governments derive their existence from the sovereign United States. This alleged rationale appears nowhere in those decisions.  Those cases found the Virgin Islands and Puerto Rico are not "persons" because they are <u>governments</u>, not because of any derivative sovereignty.

Finally, Defendants point to the United States' unrelated filings in other cases and the fact that its opening brief in this Court does not address whether Defendants have due process rights. But Defendants ignore that in the court below the United States emphasized that "[t]he Tenth Circuit has not previously determined whether

the PA and PLO, as non-sovereign foreign entities, are entitled to due process rights under the Fifth Amendment."   (CJA Vol. IV, p. 881 at n. 5). Thus, in the government's view, whether Defendants are "persons" under the Due Process Clause is an open question. This Court should hold they are not.

Additionally, or alternatively, the Court should find that personal jurisdiction over Defendants exists on any of the three bases discussed below and in Plaintiffs' Opening Brief.

### B.    Defendants Consented to Jurisdiction Under the PSJVTA

Defendants argue the PSJVTA has been found unconstitutional by every judge to consider the issue. (Appellees' Br., p. 20). But that is no longer true. On May 10, 2024, four active Second Circuit judges dissented from denial of *en banc* review of the *Fuld* decision, persuasively showing why the decision was erroneous, the PSJVTA is constitutional, and Defendants submitted to personal jurisdiction under the PSJVTA. *Fuld v. Palestine Liberation Org.*, 101 F.4th 190, 203-23 (2d Cir. 2024) (Menashi, J., dissenting, joined by Livingston, Park, Sullivan, JJ).

Thus, the clear underlined majority of federal appellate judges to consider the issue have now confirmed the PSJVTA is constitutional, and Defendants have submitted to personal jurisdiction pursuant to the PSJVTA. Four active Second Circuit judges adopted the *Fuld* dissent, while the panel decision consisted of two appellate judges and a district court judge sitting by designation. Notably, only the Second Circuit

judges on the original panel wrote to support denying *en banc* review.

In sum, four of the six federal appellate judges to have examined the question have found the PSJVTA squares with due process and Defendants are subject to personal jurisdiction in ATA case such as this. This Court should join that majority.

### 1.    Defendants Have Triggered All PSJVTA Predicates

#### a.    Pay-for-Slay

Plaintiffs alleged (based on documents Defendants produced) that during the relevant period Defendants "made over one thousand Pay-for-Slay payments, totaling millions of dollars, to over 100 terrorists involved (or to the family members of terrorists who were killed) in some 50 terrorist attacks in which American citizens were killed or injured[,]" including "monthly Pay-for-Slay payments to the families of the terrorist murderers who carried out the Terrorist Attack" from which this action arises. (CJA Vol. I, p. 31 at ¶¶ 22-23). Defendants do not and cannot dispute these facts. Indeed, Defendants conceded they triggered the PSJVTA's Pay-for-Slay prong. (CJA Vol. I, pp. 92-93 at n.4).

Defendants only seek to whitewash their conduct by mischaracterizing their payments to terrorists and relatives of terrorists who murdered or maimed United States citizens, including the American citizens murdered and maimed in this case, as "welfare." (Appellees' Br., pp. 4, 11, 33).  This self-serving assertion is of no legal or factual relevance under the PSJVTA. It is also false. Upon enacting the Taylor

Force Act, Congress found Defendants' "practice of paying salaries to terrorists serving in Israeli prisons, as well as to the families of deceased terrorists, <u>is an incentive to commit acts of terror.</u>" Pub. L. No. 115-141, § 1002(1) (Findings) (22 U.S.C. § 2378c-1 note) (Mar. 23, 2018) (emphasis added).

The legislative history of the Taylor Force Act further shows Congress <u>rejected</u> Defendants' claim that Pay-for-Slay payments are a form of "welfare." One of the Act's co-sponsors noted the PA "rewarded [terrorist] attacks by paying more than $1 billion to convicted terrorists over the past decade[,]" and explained that the Pay-for Slay program "essentially tells Palestinians: If you tragically die in a car accident, your family gets nothing; but if you die driving your car into a group of Israeli civilians, your family will be taken care of for life. That is not welfare. That is incentive to terror. It is pay for slay, and it must end." Congressional Record (Dec. 5, 2017), H9651, (statement of Rep. Deutch).

Another of the Act's co-sponsors explained that the Pay-for-Slay payments are not based on <u>need</u>, but rather on the <u>heinousness of the terrorist attack being rewarded</u>: "[F]or decades the PLO and the PA have provided payments in some form or another to terrorists and their families … The deadlier attacks of terrorism will be rewarded with even more money … There is <u>literally a payment schedule based on the severity of the terrorist attack</u>, which encourages more severe and gratuitous violence and terrorist activity." *Id*. at H9652 (statement of Rep. Gottheimer)

(emphasis added).

Likewise, even the World Bank explicitly confirmed Defendants' Pay-for-Slay payment program "is clearly not targeted to the poorest households … the level of resources devoted to the Fund for Martyrs and the Injured does not seem justified from a welfare or fiscal perspective." World Bank Report No. 38207-WBG, West Bank and Gaza Public Expenditure Review Vol. 2 at 169-70 (2007), https://bit.ly/WBG_WorldBankReview_2007.

Thus, Defendants have intentionally and repeatedly triggered the PSJVTA's Pay-for-Slay prong, and their attempt to persuade this Court that their payments of rewards and incentives for terrorism against Americans are a form of "welfare" is legally irrelevant and factually baseless.[1]

### b.    Activities in the United States

As Plaintiffs previously established, they alleged Defendants triggered the U.S.-activities predicates of the PSJVTA. (Pls' Opening Br., pp. 23-24; CJA Vol. I, pp. 29-32 at ¶¶ 18-25). Specifically, Plaintiffs alleged Defendants carried out extensive propaganda, public relations, lobbying, and social media activities in the United States during the relevant period.  (CJA Vol. I, p. 32 at ¶¶ 24-25). In moving

---

[1]    Defendants' purported support for this claim (Appellees' Br., p. 33) comes from a think-tank sponsored by and beholden to Qatar. *See* "Warren Seeks Answers from Brookings about Funding Agreements from Foreign Governments Undermining the Think Tank's Independence" (Oct. 3, 2022), https://tinyurl.com/28dccxmn.

to dismiss Plaintiffs' operative complaint, Defendants disputed none of these facts. Defendants' sole response to Plaintiffs' factual allegations regarding their U.S.-activities was to claim baldly in a footnote that <u>all</u> those activities are within the PSJVTA's UN-activities exception. (CJA Vol. I, pp. 98-99 at n.7). This conclusory assertion does not meet Defendants' burden to rebut Plaintiffs' jurisdictional allegations. "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (cleaned up).

Thus, on the factual record before this Court, it is undisputed that Defendants triggered all three predicates of the PSJVTA. Indeed, Defendants asked the court below to proceed directly to the legal (i.e. constitutional) issues without addressing the facts. (CJA Vol. I, pp. 92-93 at n.4).

Defendants now shift directions. They invite this Court to rule that their U.S.-activities are all covered by the UN exception, because this Court "may affirm on any ground supported by the record." (Appellees' Br., pp. 39-40, n.13). The Court should reject this invitation. The record consists only of Plaintiffs' factual allegations regarding Defendants' U.S.-activities, which "must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Wenz*, 55 F.3d at 1505. Since Defendants submit no affidavits or other evidence below, they cannot mount a factual challenge for the first time on appeal.

7

Defendants also do not – and cannot – dispute Plaintiffs' allegations that the "PA is not an invitee of the UN, is not an observer at the UN, and has no status whatsoever at the UN[,]" and "lacks legal capacity" therefor. (CJA Vol. I, p. 32 at ¶ 26). These uncontested facts make clear that <u>none</u> of the PA's U.S.-based activities are (or can be) covered by the PSJVTA's UN exception. Accordingly, Defendants knowingly and willingly triggered the PSJVTA's U.S.-activities predicates.

### 2.     A Defendant Need Not *Desire* to Submit to Jurisdiction

As Plaintiffs previously established, the Supreme Court made clear that although the action by which a defendant submits to jurisdiction must be volitional, it is irrelevant whether the defendant <u>willingly</u> submits to jurisdiction by taking that action. "The actions of the defendant may amount to a legal submission to the jurisdiction of the court, <u>whether voluntary or not</u>." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704-05 (1982) ("*Bauxites*") (emphasis added). (Pls' Opening Br., pp. 24-25).

To illustrate this principle, Plaintiffs pointed to the automatic waiver provisions of Rule 12 of the Federal Rules of Civil Procedure and cited multiple cases holding those waiver provisions are fully operative and effective <u>even when a defendant explicitly states its intention to preserve a personal jurisdiction defense</u>. (Pls' Opening Br., pp. 25-26).

Defendants admit that a defendant's litigation conduct can constitute submission to jurisdiction <u>despite the defendant's unwillingness</u> to submit to jurisdiction, but insist – with no explanation or analysis – that unwilling submission to jurisdiction under the PSJVTA somehow violates due process. Distilled to its essence, Defendants contend due process permits a rule, such as Rule 12(g)-(h), imposing involuntary, automatic submission to personal jurisdiction <u>on an unwilling litigant</u> due to <u>purely technical missteps</u> like forgetting to include a personal jurisdiction defense in a Rule 12(b) motion, but bars jurisdiction over a defendant who <u>knowingly and intentionally takes affirmative actions it knows will subject it to personal jurisdiction in ATA actions</u>.

This position is indefensible. No rational or logical basis exists to explain why due process tolerates involuntary imposition of personal jurisdiction under Rule 12 due to <u>a technical misstep</u> but bars such jurisdiction under the PSJVTA for <u>willingly and affirmatively</u> engaging in the conduct identified in the PSJVTA. Put differently: if Rule 12(g)-(h) is constitutional, then so is the PSJVTA; and if the latter is barred by due process, then Rule 12(g)-(h) is also unconstitutional.

Furthermore, in *Bauxites* the Court held that a defendant's submission to jurisdiction may be "voluntary or not" as a general rule of due process jurisprudence – it did not limit that principle to litigation conduct.

The *Fuld* dissent opined that due process allows submission to jurisdiction

based on knowing and voluntary conduct – but does not require <u>subjective</u> consent to jurisdiction. "The defendant need not specifically intend to consent to jurisdiction but need only take a 'voluntary act' that the law treats as consent." *Fuld*, 101 F.4th at 210-11 (citing *Bauxites* and *Pa. Fire Ins. Co. of Philadelphia v. Gold Issue Min. & Mill. Co.*, 243 U.S. 93 (1917)). The *Fuld* dissent is correct.

In short, the PSJVTA did not subject Defendants to personal jurisdiction; Defendants elected to <u>subject themselves</u> to personal jurisdiction when they knowingly and willingly carried out the actions identified in the PSJVTA.

### 3. Consent to Jurisdiction Does Not Require a Benefit

Defendants argue that a consent-to-jurisdiction statute like the PSJVTA runs afoul of due process unless it provides the defendant with a reciprocal benefit. Even the district court in *Fuld* correctly rejected this "benefit" argument: "Defendants do not cite, and the Court has not found, any case holding that such receipt of a benefit is a necessary condition." *Fuld v. Palestine Liberation Org.*, 578 F. Supp. 3d 577, 595 n.10 (S.D.N.Y. 2022).

While the *Fuld* appellate panel accepted Defendants' "benefit" argument, the *Fuld* dissent adopted the district court's view on this point and demonstrated how the Supreme Court's due process jurisprudence has never required a reciprocal benefit for submitting to jurisdiction under a consent statute. *Fuld*, 101 F.4th at 211-13. The *Fuld* dissent got it right: due process does not require a reciprocal benefit.

### 4.    Defendants' U.S. Activities are Perfectly Legal

Further to their erroneous claim that consent statutes such as the PSJVTA violate due process unless the defendant receives a benefit, Defendants argue that <u>as a matter of law</u>, they did not receive a benefit from their U.S. activities, because those activities were unlawful. (Appellees' Br., pp. 4, 11-12, 35). "Congress has blocked Defendants from conducting <u>any activities</u> in the United States." (*Id.* at p. 35, emphasis added). This is erroneous for three interrelated reasons.

First, Defendants misleadingly conflate the PLO and the PA, referring to themselves collectively as "Defendants." But the two statutes they cite clearly distinguish between the PLO and the PA.  22 U.S.C. § 5202 applies <u>only to the PLO</u>, while 22 U.S.C. § 2378b applies <u>only to the PA</u>.

Second, the plain language of § 5202 and § 2378b limits only <u>specified</u> activities. Thus, Defendants' claim they are prohibited "from conducting any activities in the United States" (Appellees' Br., p. 35) is flatly untrue. In fact, under § 2378b, "most" types of U.S.-based activities that trigger jurisdiction under the PSJVTA "do not appear to be prohibited." *Fuld*, 101 F.4th at 215.  Likewise, § 5202 prohibits far less than <u>all</u> PLO activities.

Third, the specific U.S.-based activities detailed by Plaintiffs (based on materials provided by Defendants themselves) in support of their allegation that Defendants had triggered the U.S.-activities predicates of the PSJVTA are "extensive

propaganda, public relations, lobbying, and social media activities" in the United States. (CJA Vol. I, pp. 31-32 at ¶¶ 24-25). None of those activities, the existence of which is undisputed, is barred by either § 5202 or § 2378b.

Accordingly, there is no basis for Defendants' claim that as a matter of law, they cannot have received any benefit from their U.S.-based activities because those activities are all prohibited.

### 5.    The Legality of Defendants' U.S. Activities Is Irrelevant

Even assuming arguendo Defendants' U.S. activities were barred, the Court should reject Defendants' claim they received no benefit. Holding a defendant receives no "benefit" when its in-forum conduct is unlawful has no basis in law and would lead to absurd results.

Imagine, for example, that a front corporation established by a drug kingpin for the sole purpose of hiding and laundering drug money registers to do business in Pennsylvania, thereby subjecting itself to general personal jurisdiction in Pennsylvania as in *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023). Further imagine that a plaintiff whose relative was murdered by the drug lord then brings a civil damages suit against the alter-ego corporation in a Pennsylvania court. Could the corporation successfully argue the criminal purpose for its existence means it derived no benefit from registering to do business in Pennsylvania, thus precluding personal jurisdiction there?  Clearly not.

Indeed, a defendant that carries out activities within the forum <u>inherently</u> derives a benefit therefrom, <u>irrespective</u> of whether those activities are legal or illegal. We know this because the doctrine of "specific jurisdiction" is based on the presumption that "to the extent that a corporation exercises the privilege of conducting activities within a state, <u>it enjoys the benefits</u> and protection of the laws of that state." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945) (emphasis added).

No court would rule a corporation derives no benefit from its activities in the forum, and thus cannot be subject to specific jurisdiction, merely because those activities were illegal. Indeed, specific jurisdiction is applied across the country daily, in cases where the underlying in-forum activities were unlawful or criminal, or otherwise barred by forum law.

Thus, due process permits exercise of personal jurisdiction over a defendant that enjoys the benefit of acting in the forum, even when those acts are criminal or otherwise unlawful and so barred under the law of the forum.

Though the PSJVTA is not a specific jurisdiction statute, the same principle applies to the question of whether Defendants here received a benefit: Defendants cannot erase the inherent benefit they derived from conducting their activities in the United States, by arguing that those activities were banned. That argument is both legally unsound and tainted by unclean hands. "It is an ancient equity maxim that no

one should benefit from his own wrongdoing." *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 790 (6th Cir. 2020) (cleaned up).

Indeed, even persons whose presence in the United States is unlawful enjoy "the benefits and protection" (*Int'l Shoe*, 326 U.S. at 319) of innumerable laws of the United States, including most constitutional and statutory protections. *See e.g. Plyler v. Doe,* 457 U.S. 202, 211-12 (1982) (illegal aliens protected by the Equal Protection Clause); *Mathews v. Diaz,* 426 U.S. 67, 77 (1976) ("Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to [the] constitutional protection" of the Fifth and Fourteenth Amendments); *Reyes v. Snowcap Creamery, Inc.*, 898 F. Supp. 2d 1233, 1235 (D. Colo. 2012) ("[I]t is well established that the protections of the Fair Labor Standards Act are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant."). All the more so where, as here, the Defendants are present legally in the United States, and claim merely that some of their activities are not permitted.

Accordingly, even if some of Defendants' activities in the United States were unlawful they still received a benefit <u>simply by conducting those activities while present in the United States</u>.

Simply put, if Defendants believed that conducting activities in the U.S. after the PSJVTA's trigger date provided them with no benefits, they would not have wasted their time and resources carrying out those activities. Moreover, given the

significant jurisdictional consequences of those activities under the PSJVTA, Defendants must have considered those activities as <u>extremely beneficial</u> to them.

### 6. An Enhanced Nexus Exists in this Case

The *Fuld* dissent opined that personal jurisdiction under a consent statute conforms with due process only if the defendant's actions were knowing and voluntary and had a connection – *i.e.,* a "nexus" – with the forum. The dissent found the PSJVTA "Pay-to-Slay" prong meets this "nexus" requirement "because the payments compensated terrorists for attacks <u>that killed or injured American nationals</u>. It is not 'unfair' for Congress to require a foreign entity to consent to the jurisdiction of the federal courts when the entity <u>compensated terrorists who killed Americans</u> with the knowledge that such compensation would be considered consent to jurisdiction." *Fuld*, 101 F.4th at 212-13 (emphasis added).

This rationale applies here *a fortiori*. Defendants made "monthly Pay-for-Slay payments to the families of the terrorist murderers who carried out" the <u>specific terrorist attack from which this action arises</u>. (CJA Vol. I, p. 31 at ¶ 23). Since the PSJVTA passes constitutional muster even when "the payments compensated terrorists for attacks that killed or injured American nationals" with no connection to the case (*Fuld*, *id*.), all the more so where, as here, Defendants made payments

for the particular terrorist attack from which the action arises.[2]  Moreover, given the

enhanced nexus here, this Court can narrowly hold Defendants consented to

jurisdiction under the PSJVTA under the circumstances presented here.[3]

### C.    The Defendants are Subject to Specific Personal Jurisdiction

Plaintiffs alleged and explained in extensive detail that Defendants are subject

to specific personal jurisdiction because their terrorist activity is inseparably

intertwined with their U.S.-based advocacy activities. (Pls' Opening Br. 29-38).

Defendants' putative response to Plaintiffs' specific personal jurisdiction arguments

is brief, anemic and easily refuted.  (Appellees' Br., pp. 55-58).

---

[2]    The *Fuld* district court and the Second Circuit did not consider whether payments for the specific attack from which the attack arose would impact the due process analysis. The *Fuld* plaintiffs did not make such an argument.

[3]    Defendants assert for the first time that Plaintiffs could sue in Israel. (Appellees' Br., n. 3). Aside from being irrelevant to the issues before this Court, this claim conflicts with Congress' purpose in enacting the ATA, which "was not designed simply to afford some forum to victims of terrorism; it was designed to give them a forum in the courts of the United States…the ATA was designed to give American nationals broad remedies in a procedurally privileged U.S. forum." *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 421-22 (E.D.N.Y. 2009) (emphasis added). Further to that purpose, ATA § 2334(d) strictly limits forum non conveniens dismissals in ATA actions. *Id*. at 422-23 (finding Israel an inadequate alternative forum under ATA § 2334(d)).

Defendants unsupported claim (*id*.) that American victims of the Achille Lauro hijacking were awarded $100 million by an Israeli court is completely false. Those plaintiffs were awarded only $300,000, and only after 20 years of litigation. (*See* "*PLO Ordered to Pay Compensation to Achille Lauro Hijacking Victims*," July 26, 2021, https://www.jns.org/wire/plo-ordered-to-pay-compensation-to-achille-lauro-hijacking-victims/) (viewed on May 27, 2024).

16

Plaintiffs showed in their Opening Brief that the decision in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021), changed the law of personal jurisdiction in a manner that <u>negates the pre-*Ford* decisions</u> finding these Defendants not subject to specific jurisdiction. (Pls' Opening Br. 35-37). Plaintiffs' Opening Brief surveys those decisions (*Waldman*, *Livnat, Klieman v. PA*, 923 F.3d 1115 (D.C. Cir. 2019) and *Shatsky v. PLO*, 955 F.3d 1016 (D.C. Cir. 2020)) in painstaking detail, and proves they all turned entirely on the pre-*Ford* causation requirement – i.e., that the cause of action must "arise from" the defendant's in-forum activities.

Defendants have no substantive response to this and instead resort to misrepresentations. Defendants claim that *Waldman, Livnat, Shatsky*, and *Klieman* applied the "related to" test for specific jurisdiction. (Appellees' Br., p. 56). This is simply untrue. As Plaintiffs showed, *Waldman* applied only the "arises from" test, *Livnat* found no jurisdiction because there was no link between Defendants' U.S. conduct and the particular attack from which the case arose, *Klieman* followed *Livnat* and demanded a link to the specific attack, as did *Shatsky*, 955 F.3d 1016. (Plaintiffs' Br., 35-37).

Moreover, as already shown by Plaintiffs, the rule applied in *Livnat*, *Klieman* and *Shatsky* – requiring an ATA plaintiff to trace a connection between Defendants' in-forum conduct and the <u>specific</u> terrorist attack at issue – does not survive *Ford*. If that requirement were valid, the *Ford* plaintiffs would have needed to show that

Ford's in-forum sales and advertising related to the specific vehicles that harmed them. But the Supreme Court rejected such a requirement. (Pls' Opening Br., p. 37).

Defendants also argue that their in-forum conduct (i.e., their U.S.-based advocacy) is not an element of Plaintiffs' ATA claim since that conduct did not involve "intimidation" or "coercion" as required by 18 U.S.C. § 2331(1)(B). (Appellees' Br., pp. 57-58). This claim is meritless. As extensively detailed in Plaintiffs' Opening Brief, Defendants' U.S.-based officials warned the American government and public that the terrorist violence would cease only when the U.S. used its leverage over Israel to force it to make the concessions Defendants sought. (Pls' Opening Br., pp. 31-34). By invoking the danger of further, continuing terrorism, Defendants intimidated and coerced the American government and public to exert pressure on Israel. And by generating that American pressure – to which Israel is very sensitive given its relationship with the United States – Defendants thereby intimidated and coerced the Israeli government.

In any event, the fact that a defendant's in-forum conduct constitutes an element of the claim strengthens the "related-to" test, but is not a prerequisite.

Finally, it should be strongly emphasized and noted by the Court that Defendants have not contested (in this Court or below) any of the facts underlying Plaintiffs' specific jurisdiction theory, nor have they claimed Plaintiffs' description of the interdependent symbiosis between their U.S.-based advocacy and their

terrorism is implausible, illogical or otherwise invalid.

Accordingly, this Court should find that the district court has specific personal jurisdiction over Defendants.

### D.    Jurisdiction Lies Under Rule 23.2

Contrary to Defendants' straw-man arguments (Appellees' Br., pp. 58-60), Plaintiffs do not claim Rule 23.2 overrides the Due Process clause or expands constitutional limits on personal jurisdiction. Rather, personal jurisdiction is proper because, under Rule 23.2, as in other class actions, a court obtains jurisdiction over a defendant class where it has personal jurisdiction over the class representative. *Calagaz v. Calhoon*, 309 F.2d 248, 253 (5th Cir. 1962) (personal jurisdiction over unincorporated association defendant based upon contacts of representative member); *Resolution Tr. Corp. v. Deloitte & Touche*, 822 F. Supp. 1512, 1515 (D. Colo. 1993) (same); *Battle Fowler v. Brignoli*, 765 F. Supp. 1202, (S.D.N.Y. 1991) (same). Courts applying Rule 23 to class actions generally also hold that it is "well settled that jurisdiction is not needed over absent members of a defendant class." *Nat'l Fair Hous. All. v. A.G. Spanos Const., Inc.*, 542 F. Supp. 2d 1054 (N.D. Cal. 2008) (citing cases and 2 Newberg on Class Actions § 4:34 (4th ed.)); *Cf.*, *In re Integra Realty Res., Inc.*, 354 F.3d 1246 (10th Cir. 2004) (due process not violated where unnamed, out-of-state members of mandatory defendant class were adequately represented). "To conclude otherwise and require personal jurisdiction

over all of the class members would in effect destroy the class action concept." *Duerre v. Hepler*, 2017 S.D. 8, 892 N.W.2d 209 (S.D. 2017).

Defendants cannot explain why acquiring jurisdiction in this manner satisfies due process for other class actions, but not for a Rule 23.2 class action. Establishing personal jurisdiction over a class via jurisdiction over a representative member is either valid for <u>all class actions, or for none</u>.

Pursuant to Rule 23.2, Defendants, both unincorporated associations, are subject to jurisdiction because the named representative member, Riyad Mansour, is a domiciliary of the United States subject to jurisdiction under the ATA's nationwide service provision, 18 U.S.C. § 2334(a). This is wholly consistent with class action jurisprudence and the requirements of due process. *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 445 (7th Cir. 2020) (class's affiliation with a forum depends only on the named class representatives). This is so because the class, as a whole, is the litigating entity, and its affiliation with a forum depends only on the named parties. *Id.*, *see also*, *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1227–28 (10th Cir. 2021); *Lyngaas v. Curaden AG*, 992 F.3d 412, 433 (6th Cir. 2021) (in class actions, personal-jurisdiction analysis focuses on the named class representative); *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 297 (D.C. Cir. 2020). Thus, "when it comes to jurisdictional principles, class actions are treated differently." *Murphy v. Aaron's, Inc.*, No. 19-CV-00601-CMA-KLM, 2020 WL 2079188, at *8 (D. Colo. Apr. 30,

2020), *citing Mussat,* 953 F.3d at 446-67.

Courts have long applied these principles to class actions against unincorporated associations like Defendants. In *Calagaz,* 309 F.2d at 253, the Fifth Circuit upheld personal jurisdiction over the unincorporated association based upon the court's personal jurisdiction over the named member-class representative. Defendants attempt to distinguish *Calagaz* because the unincorporated association in that case was not itself a party, whereas Defendants are both named as parties here.[4]  (Appellees' Br., p. 61). This is a distinction without a difference. The association defendant in *Calagaz* was not a named party because Alabama law did not recognize an unincorporated association as a jural person with legal capacity. 309 F.2d. at 251-52. Regardless of nuances of state law, *Calagaz* demonstrates that due process poses no obstacle to subjecting unincorporated associations to personal jurisdiction based upon jurisdiction over a representative member.

In fact, from a due process perspective, *Calagaz* is indistinguishable from the instant case. In *Calagaz,* the court of appeals found that four of the named representative defendants lacked sufficient contacts with Alabama to support personal jurisdiction. 309 F.2d at 255-56. However, the activities of a fifth named representative defendant provided "sufficient 'minimum contacts' with the State of

---

[4]    That is because Plaintiffs invoke Rule 23.2 as one of four different bases for personal jurisdiction.

Alabama to subject <u>him</u> to the jurisdiction of courts sitting in that state." *Id*. at 258 (emphasis added). And because the individual representative was subject to personal jurisdiction, the class as a whole – i.e., the unincorporated association defendant – was properly before the court. *Id*. at 253.

Defendants also attempt to distinguish *Resolution Trust Corp.*, 822 F. Supp. at 1515. They argue that the defendants there challenged personal jurisdiction over individual non-resident partners. (Appellees' Br., p. 61). But regardless of the defendants' framing of their jurisdictional challenge in that case, the district court certified three Rule 23.2 defendant subclasses and exercised jurisdiction over the unincorporated associations.

Finally, Defendants attempt to distinguish *Battle Fowler*, 765 F. Supp. 1202, by arguing "the partnership was dropped as a party." (Appellees' Br., p. 61). Again, Defendants distort the context and misconstrue the court's holding. In *Battle Fowler*, the partnership that was "dropped as a party" was a limited partnership that was the subject of an <u>earlier</u> derivative action brought by several limited partners. 765 F. Supp. at 1204; *see also, Curley v. Brignoli Curley & Roberts Assocs.*, 746 F. Supp. 1208 (S.D.N.Y. 1989), *aff'd and remanded*, 915 F.2d 81 (2d Cir. 1990) (the "*Curley* Action"). In the *Curley* Action, the district court dissolved the limited partnership (i.e., dropped it as a party), and replaced the general partner with the law firm, Battle Fowler, which was to serve as receiver and liquidating trustee of the limited

22

partnership. 765 F. Supp. at 1204 (citing *Curley*, 746 F. Supp. at 1210-1211). In an appeal of the *Curley* Action, the Second Circuit held that by dissolving the limited partnership and establishing a Rule 23.2 class, it could uphold subject matter jurisdiction and the ruling of the district court. *Curley v. Brignoli, Curley & Roberts Assoc.*, 915 F.2d 81, 85 (2d Cir. 1990).   *Id*. at 85.

Meanwhile, Battle Fowler, as receiver and liquidating trustee filed a separate action against the general partner and others. *Battle Fowler*, 765 F. Supp. 1202. There, the defendants argued that the *Curley* court had lacked <u>personal</u> jurisdiction over the dissolved limited partnership, and therefore could not properly appoint the receiver to represent the partnership. *Battle Fowler*, 765 F. Supp. at 1204. The court rejected this argument and upheld the receiver's appointment: "a court has jurisdiction over an unincorporated association pursuant to Rule 23.2 Fed. R. Civ. P. on the basis of personal jurisdiction over the named class representatives." *Id*.

Thus, Defendants' claim that Plaintiffs fail to cite cases upholding personal jurisdiction over a Rule 23.2 class based upon jurisdiction over the class representative fails. Jurisdiction over Defendants is proper because the Court has personal jurisdiction over the class representative, Mansour.

1.      **Rule 23.2 Applies to This Action**

Defendants' claim that Rule 23.2 does not apply to this action also fails.

a.      **Rule 23.2 applies irrespective of state law**

Defendants rely on a widely rejected minority view to argue that Rule 23.2 applies only to diversity actions brought in federal courts in states that do not afford unincorporated associations with jural capacity. (Appellees' Br., p. 61, citing *Northbrook Excess & Surplus Ins. Co. v. Med. Malpractice Joint Underwriting Ass'n of Mass.*, 900 F.2d 476, 479 (1st Cir. 1990)). Defendants assert that Rule 23.2 does not apply because Colorado law provides unincorporated associations with capacity to be sued. (Appellees' Br., pp. 61-62). This narrow construction of the rule has been rejected by the vast majority of courts. *See e.g.*, *Curley*, 915 F.2d at 86-87 (rejecting *Northbrook Excess*); *Kerney v. Fort Griffin Fandangle Ass'n, Inc.*, 624 F.2d 717 (5th Cir. 1980) ("Rule 23.2 clearly authorizes a class action against the members of an unincorporated association in Texas" even though Texas law grants unincorporated associations capacity); *Murray v. Sevier*, 156 F.R.D. 235, 240-41 (D. Kan. 1994); Both Wright & Miller and Moore's Federal Practice agree that the expansive view of Rule 23.2 is the more reasonable interpretation of the rule. Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1861 (3d ed.); James Wm. Moore *et al.*, Moore's Fed. Prac. § 23.2.05[4] (3d ed. 2020).

By its terms, Rule 23.2 allows the class action form to be used in <u>any</u> actions

24

involving unincorporated associations. <u>Nowhere</u> does Rule 23.2 mention capacity or state law rules regarding unincorporated associations. In fact, questions of capacity generally, and that of unincorporated associations, specifically, are addressed in Federal Rule of Civil Procedure 17. If Defendants' narrow reading were correct, Rule 23.2 would have been included within the capacity rule – Rule 17(b)(3)(A). "If the drafters of rule 23.2 intended to provide only a vehicle for capacity, it seems that they would have simply extended to the diversity realm rule 17(b)'s grant of association capacity in federal question cases," and "[i]f they intended the anomaly that the availability of class actions would turn on state capacity laws, the drafters could have so provided in the text of rule 23.2." *Curley*, 915 F.2d at 87; *Cf.* Moore's, § 23.2.05[4].

Rule 23.2 was designed to continue the prior practice of allowing a class action to be used in actions involving unincorporated associations. *Sembach v. McMahon College, Inc.*, 86 F.R.D. 188, 192 (S.D. Tex. 1980). Thus, the reporter to the Advisory Committee on Civil Rules explains that Rule 23.2 continues to provide the jurisdictional advantages that were available in unincorporated association class actions prior to the adoption of Rule 23.2. Benjamin Kaplan, *Continuing Work of the Civil Committee,*, 81 Harv. L. Rev. 356, 387, n.119. If the drafters had intended to break with the earlier practice by limiting the class action device to cases in states that do not afford capacity to unincorporated associations, they would have said so

25

in the Rule.

### b.    Rule 23.2 allows actions against unincorporated associations as an entity

Defendants argue Rule 23.2 may not be used to sue an unincorporated association as if it were an entity. They claim the rule allows only suits against the individual members of an association as a class. (Appellees' Br., p. 62). Defendants try to read this construction into Rule 23.2's reference to actions "by or against the members of an unincorporated association as a class." (*Id*.) But none of the case law supports this forced reading.

In fact, *Northbrook Excess*, on which Defendants rely, cites the Advisory Committee Note to Rule 23.2 for the proposition that Rule 23.2 gives "'entity treatment' to unincorporated associations" which would otherwise not be subject to suit. *Northbrook Excess*, 900 F.2d at 477 (emphasis added). Thus, Rule 23.2 allows suit against the unincorporated association as an entity. Cases disagreeing with *Northbrook Excess*'s narrow application of the rule agree the rule gives unincorporated associations legal capacity where necessary. *Murray v. Sevier*, 156 F.R.D. 235, 253 (D. Kan. 1994) (citing cases). They hold Rule 23.2 goes further and "provides an additional means of proceeding against an unincorporated association, whether or not state law provides for an action against the entity itself." *Id*.

### c.    Mansour is a proper representative of Defendants

Defendants argue that Mansour is not a proper Rule 23.2 representative

because he did not personally engage in terrorist activities. (Appellees' Br., p. 62). However, Rule 23.2 does not require that a class representative engage in actionable conduct.

Rule 23.2 requires only that the class representative fairly and adequately represents the association. Fed. R. Civ. P. 23.2; *Curley*, 915 F.2d at 85; *Murray*, 156 F.R.D. at 240-41; Wright & Miller, § 1861. "The requirement of 'fair and adequate representation' is satisfied when: (1) the named representatives have common interests with the other class members; and (2) the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Resolution Trust*, 822 F. Supp. at 1515.

Mansour clearly has such "common interests" and will protect those  through qualified counsel. Mansour is a member and officer of both the PLO and the PA. He has been a member of the PLO since 1983, and since that time has served in senior positions. On September 5, 2005, the PA appointed Mansour to a very senior position within its "Ministry of Foreign Affairs," a position he continues to hold today. (CJA Vol. I, pp. 33-34 at ¶¶ 31-35; pp. 167-171). Moreover, Mansour and Defendants PLO and PA are represented by the same highly-qualified counsel. *Cf. Resolution Trust*, 822 F. Supp. at 1515 (adequate representation where litigation was handled by defendant association's national counsel).

The district court's holding that Rule 23.2 does not provide it with personal

jurisdiction over Defendants should be reversed.

## II.    Defendants Concede the Nonfederal Claims Should be Reinstated

Plaintiffs argued their nonfederal claims against Defendants should be reinstated. (Pls' Opening Br. at 43-44). Defendants have neither opposed this relief nor disputed Plaintiffs' arguments in support thereof. (Appellees' Br., *passim*).

Accordingly, this unopposed relief should be granted for the reasons set forth in Plaintiffs' Opening Brief.[5]

## <u>CONCLUSION</u>

For the reasons above and in Plaintiffs' Opening Brief, this Court should vacate the district court's decision and remand the case for further proceedings.

---

[5]    As noted in Plaintiffs' Opening Brief (*id*.), it is unclear why, after finding personal jurisdiction lacking, the court below did not dismiss the nonfederal claims for lack of personal jurisdiction (as requested by Defendants), but reached out to dismiss those claims for lack of subject-matter jurisdiction under 28 U.S.C. § 1367(c)(3).

By:  *s/ Chip G. Schoneberger*
Chip G. Schoneberger
Daniel K. Calisher
Michael A. Rollin
FOSTER GRAHAM MILSTEIN &
CALISHER, LLP
360 South Garfield Street, 6th Floor
Denver, CO 80209
Telephone:  (303) 333-9810
cschoneberger@fostergraham.com
calisher@fostergraham.com
mrollin@fostergraham.com
*Counsel for Plaintiffs-Appellants*

By: *s/ Asher Perlin*
Asher Perlin, Esq.
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
Telephone: (786) 687-0404
asher@asherperlin.com
*Counsel for Plaintiffs-Appellants*

## <u>ORAL ARGUMENT STATEMENT</u>

Plaintiffs-Appellants request oral argument.  This appeal involves multiple complex constitutional issues of far-reaching importance.  Oral argument will assist the Court in reaching its decision.

4895-9101-8949, v. 1

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

**Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type Style Requirements**

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

> [X] this document contains 6,474 words, or
> [] this brief uses a monospaced typeface and contains <state the number of lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> [X] this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO version 2304 in 14 pt. Times New Roman, or
> [ ] this document has been prepared in a monospaced typeface using <state name and version of word processing program> with <state number of characters per inch and name of type style>.

Date: June 3, 2024

> *s/ Chip G. Schoneberger*
> Chip G. Schoneberger
> 360 S. Garfield Street, 6th Floor
> Denver, Colorado 80209
> 303-333-9810
> cschoneberger@fostergraham.com
>
> *Attorney for Appellants Chaya Werfel, et al.*

31

## <u>CERTIFICATE OF SERVICE</u>

     I, Chip G. Schoneberger, attorney for appellants, hereby certify that on June 3, 2024, I served a copy of the foregoing **Appellants Chaya Werfel, et al.  Reply Brief**, to counsel for appellees and counsel for Intervenor United States of America, via the court's electronic-filing CM/ECF system.

     Date: June 3, 2024

                         *s/ Chip G. Schoneberger*
Chip G. Schoneberger
360 S. Garfield Street, 6th Floor
Denver, Colorado 80209
303-333-9810
cschoneberger@fostergraham.com

*Attorney for Appellants Chaya Werfel, et al.*