Case Nos. 23-1286 and 23-1335

IN THE

# United States Court of Appeals

FOR THE TENTH CIRCUIT

◆◆◆

**CHAYA WERFEL, et al.,**

*Plaintiffs – Appellants*

— v. —

**PALESTINE LIBERATION ORGANIZATION, et al.,**

*Defendants – Appellees*

---

**UNITED STATES OF AMERICA,**

*Intervenor – Appellant*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO (Denver)
District Court Case No. 21-cv-03043; The Honorable Gordon P. Gallagher

**SUPPLEMENTAL BRIEF OF APPELLEES
ORAL ARGUMENT REQUESTED**

| | |
|---|---|
| Joseph S. Alonzo<br>SQUIRE PATTON BOGGS (US) LLP<br>1211 Avenue of the Americas<br>26th Floor<br>New York, N.Y. 10036<br>Telephone: (212) 872-9831<br>joseph.alonzo@squirepb.com | Gassan A. Baloul<br>Mitchell R. Berger<br>Amy Brown Doolittle<br>SQUIRE PATTON BOGGS (US) LLP<br>2550 M Street, N.W.<br>Washington, D.C. 20037<br>Telephone: (202) 457-6000<br>gassan.baloul@squirepb.com<br>mitchell.berger@squirepb.com<br>amy.doolittle@squirepb.com<br><br>*Counsel for Appellees* |

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ........................................................................................................1

    I.   "Deeming" that Defendants "Consented" to Personal Jurisdiction Would Violate Due Process ........................................................................................2

    II.  The PSJVTA Does Not Provide Any "Benefit" to Defendants. ......................7

CONCLUSION ..........................................................................................................11

CERTIFICATE OF SERVICE ...................................................................................12

CERTIFICATE OF DIGITAL SUBMISSION .........................................................13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)..................................................................................6

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021)..............................................................................6

*Fuld v. PLO*,
   101 F.4th 190 (2d Cir. 2024) ......................................... 1, 2, 3, 4, 5, 6, 8, 9, 11

*Fuld v. PLO*,
   82 F.4th 74 (2d Cir. 2023) ........................................................................6

*Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982).............................................................................6, 11

*Estate of Klieman v. Palestinian Auth.*,
   923 F.3d 1115 (D.C. Cir. 2019)...................................................................9

*U.S. v. PLO*,
   695 F. Supp. 1456 (S.D.N.Y. 1988) ..............................................................9

*Waldman v. PLO*,
   925 F.3d 570 (2d Cir. 2019) ......................................................................7

**Statutes**

18 U.S.C. § 2331(1)(B)(ii)...............................................................................7

22 U.S.C. § 5201(b) ......................................................................................8

22 U.S.C. § 5202..........................................................................................8

**Other Authorities**

Meetings Coverage, *General Assembly Votes Overwhelmingly to Accord Palestine 'Non-Member Observer State' Status in United Nations* (Nov. 29, 2012), at: https://press.un.org/en/2012/ga11317.doc.htm ................................................. 10

Palestinian Academic Society for the Study of International Affairs, *PLO v. PA* (Sept. 2014) .......................................................................................... 8

# INTRODUCTION

On May 10, 2024—one month after Defendants-Appellees the Palestinian Authority, the Palestine Liberation Organization, and Ambassador Mansour (collectively, "Defendants") filed their brief in this case—the Second Circuit denied plaintiffs' and the Government's petitions for rehearing *en banc* in *Fuld* and *Sokolow/Waldman*, two consolidated cases addressing the constitutionality of the PSJVTA. *See Fuld v. PLO*, 101 F.4th 190 (2d Cir. 2024) (denying rehearing *en banc*). The Second Circuit adhered to the Panel's decision that the "deemed consent" provisions of the PSJVTA fail to provide a valid basis for exercising personal jurisdiction over Defendants, and thus violate the Due Process Clause. In an opinion concurring in the denial of rehearing *en banc*, Judge Bianco (a member of the original Panel) reiterated the Panel's conclusion that none of Defendants' activities within or outside the United States supported an inference that Defendants knowingly and voluntarily "consented" to jurisdiction in U.S. court for alleged attacks taking place in Israel and Palestine.

Although the denial of rehearing *en banc* in *Fuld* and *Sokolow*/*Waldman* reaffirms many of the arguments presented by Defendants in this case, Appellants nonetheless repeatedly rely on a <u>dissent</u> from the denial of rehearing in their Reply Briefs before this Court. Collectively, Plaintiffs and the Government cite the dissent nearly a dozen times in their Reply Briefs—even though the dissent's arguments

1

failed to garner enough support to rehear the case (let alone to reverse the Panel's ruling). Plaintiffs go so far as to inaccurately claim that "the clear majority of federal appellate judges to consider the issue have now confirmed the PSJVTA is constitutional." Pls. Reply at 3. That assertion overlooks not only the eight active Second Circuit judges who voted not to rehear the case, but also the unanimous conclusion of every federal district judge to consider the issue. As Defendants pointed out in their brief, every court to consider the issue—including the Second Circuit—has concluded that the "deemed consent" provisions of the PSJVTA violate due process.

Defendants have not yet had an opportunity to address Appellants' new arguments based on the dissent from the denial of rehearing *en banc*, because the Second Circuit issued its order after Defendants had already filed their brief in this case. To aid this Court's consideration of the same issues and to respond to Appellants' new arguments, Defendants therefore respectfully submit this supplemental brief.

I. **"Deeming" that Defendants "Consented" to Personal Jurisdiction Would Violate Due Process.**

Despite their heavy reliance on the dissent from the denial of rehearing *en banc* in *Fuld* and *Sokolow/Waldman*, Appellants have remarkably little to say about Judge Bianco's opinion concurring in the denial of rehearing, which reaffirmed the original Panel's ruling. Appellants' silence is notable, given that Judge Bianco

2

specifically addressed—and rebutted—several misstatements in the dissent, which Appellants now repeat before this Court.

<u>First</u>, Judge Bianco made clear that—contrary to Appellants' repeated assertions in this case—nothing in the Second Circuit's opinion <u>requires</u> an "exchange of benefits" to infer consent. Rather, the Panel "described in detail numerous circumstances that the Supreme Court found 'manifested' consent—including 'reciprocal bargains' but also 'litigation-related activities' and others—and found that the PSJVTA did not satisfy any of these circumstances." 101 F.4th at 195. An "exchange of benefits" is one common way of inferring consent to jurisdiction but, as Judge Bianco emphasized, it is "not required in all cases of consent." *Id.* at 196. Accordingly, there is no merit to the dissent's repeated mischaracterization of the Panel's decision as <u>requiring</u> an "exchange of benefits" to infer consent to jurisdiction. *See id.* at 204, 209-14 (Menashi, J., dissenting from denial of rehearing *en banc*).

Appellants repeat that charade in this Court, asserting that Defendants "seek to limit the circumstances under which a defendant can impliedly consent to jurisdiction" to an exchange of "reciprocal benefit[s]," and that "[t]he Second Circuit relied on similar reasoning in *Fuld*." Gov't Reply at 6; *see also* Pls. Reply at 10 (same). But as Judge Bianco made clear, that assertion simply ignores the broader standard employed by the Second Circuit (and articulated at length in Defendants'

3

brief in this case): to determine whether Defendants impliedly consented to jurisdiction, the Court must determine whether the specific conduct alleged by Plaintiffs supports the presumption that Defendants knowingly and voluntarily submitted to jurisdiction in the United States. *See* 101 F.4th at 197-98; Defs. Br. at 20-29. The conduct alleged by Plaintiffs in this case falls far short of that standard, for all the reasons identified in Defendants' brief. *See* Defs. Br. at 30-40.

Second, Judge Bianco likewise debunked the assertion that the PSJVTA draws support from the Supreme Court's recent decision in *Mallory*. Latching onto the non-controlling analysis in the dissent from the denial of rehearing, Appellants claim that the PSJVTA "parallels the statute upheld in *Mallory*." *See* Gov't Reply at 7-8, 11-12; Pls. Reply at 9-10. But as Judge Bianco explained, the type of business registration statute at issue in *Mallory* falls comfortably within the "exchange of benefits" caselaw described above, in which a defendant signals its voluntary agreement to submit to jurisdiction in the forum by accepting some benefit from the forum conditioned on consent. 101 F.4th at 196. The PSJVTA, by contrast, fails to offer any "benefit" for Defendants to accept in exchange for their purported consent, and thus falls outside this line of cases.[1] *Id.* at 195-98; *see also* Defs. Br. at 47-49.

---

[1] Again, this does not mean that an exchange of benefits is required in every case. *See* 101 F.4th at 196 (explaining "an exchange of benefits was an important part of the justification for the consent to jurisdiction in business registration statutes, such as the statute at issue in *Mallory*, but [is] not required in all cases of consent"). But

Moreover, Appellants have failed to identify any other basis (aside from legislative say-so) for inferring that Defendants knowingly and voluntarily submitted to jurisdiction in the United States by engaging in the same conduct previously held insufficient to support the exercise of personal jurisdiction. *See* Defs. Br. at 15-20.

Third, Judge Bianco also squarely rejected the same type of "nexus" test espoused by Appellants in this case, and in the dissent from the denial of rehearing *en banc*. *See* 101 F.4th at 196-97. Rather than addressing the traditional test for "knowing and voluntary" consent reflected in cases like *College Savings Bank* and *Fuld*, Appellants instead rely on the dissent to assert that a "deemed consent" statute is constitutional so long as the defendant voluntarily engages in the specified activities and those activities bear a "fair and reasonable connection" to the United States. *See* Gov't Reply at 9; Pls. Reply at 15 (adopting the dissent's "nexus" test).

But as Judge Bianco explained, there is not a single case supporting the dissent's assertion that a court may "impute consent to jurisdiction based simply on an undefined nexus to the forum." 101 F.4th at 197. Accepting Appellants' watered-down version of consent "would allow Congress to subject any foreign entity to personal jurisdiction in the United States, even in the absence of any contacts with

---

the Panel did not find a single case—and neither Plaintiffs nor the Government have identified one here—in which a court inferred consent to personal jurisdiction from non-litigation-related conduct where no benefit was conferred by the forum in exchange for the defendant's consent. *Id.* at 198.

5

the United States, if that entity knowingly and voluntarily engages in any conduct around the world (with some undefined nexus to the United States) after Congress enacts legislation deeming the continuation of that conduct to constitute consent to personal jurisdiction in the United States courts."² *Id.* As Judge Bianco recognized, adopting such a standard would eviscerate modern due-process jurisprudence, leaving no limit to the types of conduct that could subject a defendant to personal jurisdiction in federal court.³ *Id.* The Second Circuit thus correctly held that "Congress cannot, by legislative fiat, simply 'deem' activities to be 'consent' when the activities themselves cannot plausibly be construed as such." *Fuld v. PLO*, 82 F.4th 74, 97 (2d Cir. 2023) (Panel Op.).

---

² Plaintiffs' assertion (at 15) that an "enhanced nexus" exists in this case is Orwellian, given the courts' uniform holdings that the same type of conduct alleged by Plaintiffs in this case lacks a sufficient connection to the United States to support the exercise of personal jurisdiction. *See* Defs. Br. at 16-20.

³ For example, that "undefined nexus" test would allow jurisdiction through the fiction of deemed "consent" even when, as under the PSJVTA, the plaintiff's claims do not arise from or relate to the defendant's conduct in the forum (eviscerating *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021)), and the defendant lacks sufficient contacts to be essentially "at home" in the United States (eviscerating *Daimler AG v. Bauman*, 571 U.S. 117 (2014)). The "undefined nexus" test also fails to ensure that the conduct itself is capable of "supporting a jurisdictional finding," as necessary for consent jurisdiction under *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982). *See* Defs. Br. at 22-23.

## II. The PSJVTA Does Not Provide Any "Benefit" to Defendants.

This Court also should reject Plaintiffs' new arguments regarding the PSJVTA's U.S. activities prong. Relying on the dissent from the denial of rehearing *en banc*, Plaintiffs argue for the first time that Defendants are allowed to operate in the United States. Pls. Reply at 11-12. This new argument is unavailing, however, because the only U.S. activities they allege in their complaint (after the PSJVTA's enactment[4]) are the activities of Palestine's UN Mission in New York. *See* CJA-31-32, ¶¶ 24-25. It is well-established that Palestine's UN Mission does not qualify as an "office or other facility within the jurisdiction of the United States," and therefore cannot provide a basis for jurisdiction. *Waldman v. PLO*, 925 F.3d 570, 575 (2d Cir. 2019).[5]

Aside from the activities of Palestine's UN Mission, Congress has long blocked Defendants from operating in the United States. As explained in Defendants' brief (at 35-37), the Anti-Terrorism Act of 1987 denies "the PLO and its affiliates" the "benefit" of "operating in the United States" by making it unlawful

---

[4] Activities before the PSJVTA's January 2020 effective date are only relevant to specific jurisdiction, not consent under the PSJVTA.

[5] Plaintiffs' welcome admission (at 11) that Defendants' U.S. activities are "Perfectly Legal" also necessarily rebuts their argument (*e.g.*, at 18) that Defendants' advocacy constitutes "intimidation or coercion"—illegal activity under the ATA. *See* 18 U.S.C. § 2331(1)(B)(ii). As Plaintiffs now concede, Defendants have always maintained that they "do nothing in the U.S. that is illegal under the ATA." CJA-961 (emphasis in original).

to give money to employees or agents, to spend any money, or to run any office. 22 U.S.C. §§ 5201(b), 5202. The PA did not exist in 1987, but even if the PA was not an "affiliate" of the PLO, the statute also expressly applies to "any successor" of the PLO (*id*.)—and the PA succeeded to most of the PLO's prior political and governmental functions in Palestine.[6]

As Judge Bianco recognized, this long-standing prohibition on Defendants' non-UN-related activities in the United States precludes any argument that Defendants enjoy the "benefit" of operating in the United States. 101 F.4th at 199. The PSJVTA did not change this status quo because it "does not purport to relax or override these prohibitions" under the 1987 ATA (22 U.S.C. § 5202) and other statutes. *Id*. (quoting *Fuld*, 82 F.4th at 92).

In fact, the Government concedes—undermining Plaintiffs' contrary argument—that the long-standing prohibition on Defendants' non-UN-related activities in the United States remains in effect. *See* Gov't Reply at 10-11 (acknowledging "Congress and the Executive Branch have generally prohibited the PA and PLO from engaging in a range of activities in the United States") (emphasis added). The PSJVTA does not expressly waive these restrictions and, contrary to

---

[6] Palestinian Academic Society for the Study of International Affairs, *PLO v. PA*, at 5 (Sept. 2014) ("Much of [the PLO's] personnel and budget were shifted to the PA … with staff often assuming high level positions in the new administration.").

Plaintiffs' assertions, there is no such thing as an "implied" waiver of the 1987 ATA's prohibition. *See Estate of Klieman v. Palestinian Auth.*, 923 F.3d 1115, 1130 (D.C. Cir. 2019) (holding any such waiver must be express). Accordingly, as Judge Bianco explained, there is no basis for asserting that Defendants have received the "benefit" of operating in the United States. 101 F.4th at 197, 199.

There is likewise no support for Plaintiffs' new argument that the PA is not "covered by the PSJVTA's UN exception" because it is not a UN "invitee." Pls. Reply at 8. The Oslo Accords "limit the PA's authority to parts of the West Bank and Gaza Strip, and for that reason, the PLO conducts foreign affairs." 101 F.4th at 195. Palestine's UN Mission is a continuation of the antecedent PLO UN Mission, and the PA is limited by the Oslo Accords to domestic governmental functions in Palestinian territory. Accordingly, Plaintiffs have failed to allege any basis for exercising jurisdiction over the PA under the U.S. activities prong because the activities of the UN Mission are necessarily PLO activities and are the only U.S. activities alleged by Plaintiffs that post-date the PSJVTA. *See* CJA-31-32, ¶¶ 24-25. In any case, it is the United Nations (and not Plaintiffs or the Government) that designates UN "invitees" under the UNHQA. *See U.S. v. PLO*, 695 F. Supp. 1456,

9

1465-68 (S.D.N.Y. 1988). And the UN has recognized <u>the State of Palestine</u> as a non-member observer state "invitee" since 2012.[7]

To the extent that the State of Palestine as UN invitee includes both the PLO and the PA, any PA UN activities necessarily are exempt from jurisdictional consideration under the PSJVTA, which expressly excludes UN activities protected by the UNHQA. Plaintiffs make broad, conclusory statements contending that Defendants' U.S. activities exceed UN limits, but they fail to identify any specific allegation of such activity. *See* Pls. Reply at 6-7. As Defendants previously argued, Palestine's UN Mission participates in the work of the UN Committee on the Exercise of the Inalienable Rights of the Palestinian People ("CEIRPP"). CEIRPP's purpose includes "mobiliz[ing] the international community" to provide "the broadest possible international support" for the Palestinian people. *See* Defs. Br. at 39 n.13.

Plaintiffs fail to allege any particular U.S. activities by Defendants that would fall outside CEIRPP's work, or that would not be at least "ancillary" to such UN business (and therefore excluded from jurisdictional consideration under the PSJVTA). Plaintiffs similarly fail to explain how any particular U.S. activities

---

[7] Meetings Coverage, *General Assembly Votes Overwhelmingly to Accord Palestine 'Non-Member Observer State' Status in United Nations* (Nov. 29, 2012), at: https://press.un.org/en/2012/ga11317.doc.htm.

alleged in their complaint could "support[] a jurisdictional finding" as necessary for a presumption of consent under *Bauxites*. *See* Defs. Br. at 48-49. Accordingly, as Judge Bianco explained in rebutting a similar mischaracterization by the dissent (*see* 101 F.4th at 199 n.1), there is no merit to Plaintiffs' assertion that Defendants did not "dispute[]" their allegations regarding Defendants' U.S. activities. *See* Pls. Reply at 7. Rather, Defendants have consistently maintained that, particularly in light of Palestine's role at the UN, none of Plaintiffs' conclusory allegations regarding Defendants' U.S. activities provides a valid basis for exercising personal jurisdiction over Defendants.

## CONCLUSION

For the foregoing reasons, this Court should affirm the decision below.

Date: June 14, 2024

*/s/ Gassan A. Baloul*
Gassan A. Baloul
Mitchell R. Berger
Amy Brown Doolittle
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
gassan.baloul@squirepb.com
mitchell.berger@squirepb.com
amy.doolittle@squirepb.com

Joseph S. Alonzo
SQUIRE PATTON BOGGS (US) LLP
1211 Avenue of the Americas, 26th Floor
New York, N.Y. 10036
Telephone: (212) 872-9831
joseph.alonzo@squirepb.com

11

## CERTIFICATE OF SERVICE

I hereby certify that, on June 14, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date:  June 14, 2024

*/s/ Gassan A. Baloul*
Gassan A. Baloul

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Carbon Black Cloud, version 4.0.0.1292, which is updated daily as a matter of course, and according to the program is free of viruses.

*/s/ Gassan A. Baloul*
Gassan A. Baloul
